McCord v. Marsh.

WILLIAM D. McCORD, APPELLANT, V. GEORGE W. MARSH,
AUDITOR, APPELLEE.

FILED JUNE 12, 1922.   No. 22691.

1.  Schools and School Districts: ISSUANCE OF BONDS.   Section 6971,
    Rev. St. 1913, as amended by chapter 129, Laws 1917, and as later
    amended by chapter 143, Laws 1919, authorizes boards of educa-

tion of school districts to issue bonds of the school district by consent of two-thirds of the members of such board, whenever a petition is filed with the board requesting the issuance of bonds, signed by not less than 51 per cent. of the qualified voters of such school district.

2. ——: ——. In such case, it is not necessary that the question of the issuance of bonds should be submitted to a vote of the electors at any regular or special election.

3. ——: ——. In such case, it is competent for the board of education to appoint a committee of its members to examine the petition and investigate the number of legal voters in the district, and to make a report of its investigation, so long as the final determination of the ultimate fact still remains with the board.

4. ——: ——. The record made by the board of education examined, and *held* to be a sufficient finding that not less than 51 per cent. of the legal voters of the school district had signed the petition requesting the issuance of the bonds in question.

5. Constitutional Law: School Districts: Issuance of Bonds. Where bonds are issued in pursuance of a petition of the electors, as provided by statute, section 6971, Rev. St. 1913, as amended by chapter 129, Laws 1917, and chapter 143, Laws 1919, a taxpayer cannot complain that he is deprived of his property without due process of law because the legislature has failed to provide a tribunal before whom he can appear and object to the issuance of the bonds.

6. ——: ——: ——. When, before a tax is levied to aid in the payment of school bonds, the county board, sitting as a board of equalization, meets at a time and place designated by general law, a taxpayer cannot complain on the ground that his property is being taken without due process of law.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*C. C. Flansburg,* for appellant.

*Clarence A. Davis, Attorney General, Hall, Baird & Williams* and *William M. Ely, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, ALDRICH and DAY, JJ.

DAY, J.

The plaintiff, a resident elector and taxpayer of the city of Ainsworth and of school district No. 10, Brown county, brought this action against George W. Marsh, as auditor of public accounts of the state of Nebraska, to enjoin the registration of school bonds in the sum of $125,000, which had been executed by the officers of said school district. The plaintiff also sought to have the bonds declared void. The trial court denied the relief prayed, and dismissed the petition. The plaintiff appeals.

The record shows that a petition signed by 396 of the duly qualified electors of the school district was filed with the board of education requesting them to issue bonds of the district in the sum of $125,000 to run for a period of not to exceed 30 years and to bear interest at not to exceed 6 per cent. the proceeds to be used for the purpose of erecting and equipping a new school building and repairing the present school buildings. The board thereupon appointed a committee from among their number to examine the last census report, the tax records, and other sources of information, and determine whether at least 51 per cent. of the legal electors of the district had signed the petition. The committee reported to the board that 396 of the signatures to the petition were of qualified voters of the district, and that upon a careful count there were 711 legal voters in the district. The board thereafter found that more than 51 per cent. of the legal voters in the district had signed the petition, and thereupon issued the bonds of the district in the sum of $125,000, payable at stated intervals. The bonds, together with their history, were duly signed and presented to the defendant, the auditor of public accounts, for registration.

The plaintiff assails the validity of the bonds upon two main grounds: First, that the proceedings of the board of education, in determining whether a sufficient petition had been filed authorizing the issuance of the bonds, were not in accordance with the provisions of the statute; and, second, that the statute under which the board acted is

unconstitutional, because it deprived the plaintiff of his property without due process of law.

The proceedings of the board leading up to the issuance of the bonds were taken under section 6971, Rev. St. 1913, as amended by chapter 129, Laws 1917, and as later amended by chapter 143, Laws 1919, and will be referred to hereinafter as the statute. As originally enacted, this statute empowered boards of education to issue school district bonds, when authorized by a majority vote of the electors at any regular election or at any special election called for that purpose. The amendment of 1917 simply added to the statute the power to issue special warrants. The amendment of 1919 embodied all of the features of the law as it formerly stood, and added a clause as follows: "Provided, further, that when there shall have been presented to such board of education a petition signed by at least 51 per cent. of all the legal voters of said district praying for the issuance of such bonds or special warrants, the board of education may issue such bonds or special warrants in such an amount as may be named in such petition, without having submitted the question of the issuance of the same to the voters of said district at any election."

It is argued by the plaintiff in support of his first objection that the reference by the board of education to a committee to ascertain whether not less than 51 per cent. of the qualified voters of the district had signed the petition was an unwarranted delegation of the powers of the board. It is plain from a reading of the statute that the board has no power to issue bonds upon a petition, unless such petition be signed by not less than 51 per cent. of the qualified electors of the district. It is also plain that the statute has not prescribed any method or means of determining the sufficiency of such a petition. In such case, we think it is clearly within the power of the board to determine that fact upon knowledge obtained from any reliable source of information available. We can see no valid objection to the board appointing a committee from its num-

ber to examine the petition and investigate the number of legal voters in the district, and to make a report of its investigation, so long as the final determination of the ultimate fact still remains with the board.  Of course, the board could not delegate to the committee the power of final determination of matters committed to its judgment. In this connection, it is further argued that the findings of the board are not sufficient to show that at least 51 per cent. of the voters of the district had signed the petition, and that, therefore, the proceedings of the board in issuing the bonds must fail.  In this regard, the record shows that the committee reported that there were 711 legal voters in the district, and that 396 of them had signed the petition.  The records of the board show that this report was adopted.  Thereupon a resolution was unanimously passed, reciting:  "Whereas, a petition signed by more than 51 per cent. of the legal voters of said school district of the city of Ainsworth, Brown county, Nebraska, has been presented to the board of education of said district and duly filed by the secretary thereof, praying that bonds of said school district be issued in a sum not to exceed $125,000."  This finding, it is true, lacks the formality as well as the accuracy usually found in court proceedings. Still, we think that it is a sufficient finding to show the determination of the board that the requisite number of voters had signed the petition.  That it was so intended by the board, we think there can be no doubt. It is a matter of common knowledge, which the courts recognize, that business affairs of school districts are frequently placed in the hands of persons who are unskilled in the use of language, and that the public records made by such persons are often not full and complete; but such records are usually sustained by the courts, where the intent of the board sufficiently appears.

In support of his second contention, that the statute is unconstitutional, the plaintiff invokes the general rule that an owner of property is entitled to notice and an opportunity to be heard before some tribunal before a tax burden

is irrevocably fixed against his property. It is argued, inasmuch as the statute nowhere gives him the opportunity to contest the validity of the bonds, that, therefore, he is deprived of his property without due process of law. We think the argument is founded upon a wrong premise. The issuance of bonds based upon a petition of the voters stands upon the same legal footing as bonds issued by virtue of an election. The maintenance of schools is a governmental function, and it was clearly within the power of the legislature to authorize the issuance of bonds for school purposes upon any conditions it might see fit to impose. It could direct that the bonds be issued by a vote of the electors, or by petition, or by the mere action of the board itself. We have been cited to no case holding that a taxpayer must be given a hearing and an opportunity to contest the validity of the election before the district officers act upon the results thereof. Where school district officers are exceeding their powers or acting without jurisdiction the courts are open to an aggrieved taxpayer for redress; but, besides this, we think it can hardly be said that the mere voting of bonds is equivalent to the levying of a tax. It is one of the steps leading up to a tax levy. Under our system of taxation the board of education does not make a levy. It certifies the number of mills necessary for school purposes to the county board, and the county board makes the levy. Before doing so, the county board sits as a board of equalization, the time and place of which are fixed by general provisions of statute. At such time a taxpayer feeling himself aggrieved has full opportunity to resist any inequality in a proposed tax. It is a general rule that, before a tax is levied upon the property of the owner, he must have an opportunity to be heard; but it is also the rule that, where a tribunal is created for the equalization of taxes, which body by statute meets at a given time and place for hearing complaints, such tribunal meets all the requirements of due process of law. In such case, the notice by statute is sufficient, and personal notice is unnecessary.

The tax which may be levied against the plaintiff's property for the payment of the indebtedness is a general tax to be levied and assessed upon all the property in the school district in proportion to value, and the plaintiff will have opportunity to be heard before the board of equalization if he claims any inequality in his tax.

From a consideration of the entire board, we think it clear that the bonds were issued in full compliance with the requirements of the statute, and that the statute authorizing the bonds was a legitimate exercise of legislative authority. No sufficient reason has been pointed out why the bonds should not be registered.

The judgment of the district court is, therefore,

AFFIRMED.