GARY FRYE ET AL., APPELLANTS, V. KENNETH HAAS, COUNTY
TREASURER OF CHERRY COUNTY, NEBRASKA, ET AL.,
APPELLEES.

152 N. W. 2d 121

Filed July 7, 1967. No. 36549.

Wilson, Barlow & Watson, for appellants.

Clarence A. H. Meyer, Attorney General, Harold Mosher, and Richard L. Spittler, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

In establishing 19 educational service units composed of different groups of counties and embracing all 93 counties, to supplement the services of school districts of the State of Nebraska (L.B. 301, sections 79-2201 to 79-2212, R. S. Supp., 1965), the Legislature authorized the units to certify a tax levy of not to exceed 1 mill directly to the county treasurers for collection, thus bypassing the county boards of equalization who, under the statute, section 77-1601, R. S. Supp., 1965, within a fixed period of time, levy the taxes for cities, school districts, and other political subdivisions existing within the counties. The primary question involved is whether this procedure and the whole procedure provided for deprives the plaintiffs, taxpayers, of due process of law in that they are not given their constitutional right to a suitable notice and opportunity to be heard. The district court found the statute constitutional and we affirm the judgment.

The statute under attack, section 79-2210, R. S. Supp., 1965, provides: "The board for each educational service unit may levy a tax of not to exceed one mill on the dollar on the assessed valuation of all property except intangible property within its geographical unit. The amount of any such levy shall be certified by the secretary of the board to the county treasurer of each county within the educational service unit who shall collect

the same as other taxes are collected and remit the proceeds therefrom to the county treasurer who is ex-officio treasurer of the board."

In order to frame this problem in proper perspective some preliminary observations are necessary. This is a general and not a special tax, levied for public purposes under section 6 of Article VII of the Constitution of the State of Nebraska, directing the Legislature to provide for the common schools. Within the meaning of the due process clause, laws for the levy and collection of general taxes stand upon a different footing than laws for the levy and collection of special assessments or special taxes and are to be construed with the utmost liberality. In some cases no notice whatever is required. State v. Several Parcels of Land, 83 Neb. 13, 119 N. W. 21, L. R. A. 1916E 1; Turpin v. Lemon, 187 U. S. 51, 23 S. Ct. 20, 47 L. Ed. 70; Glidden v. Harrington, 189 U. S. 255, 23 S. Ct. 574, 47 L. Ed. 798. See, exhaustive discussion of this distinction in Harmon v. Bolley, 187 Ind. 511, 120 N. E. 33, 2 A. L. R. 609. The power to levy a general tax is inherent in the sovereign, is purely legislative in character, and due process does not require that the property subject to the tax or the amount to be levied should be subjected to judicial inquiry. Tax proceedings are necessarily summary in character, may not be impeded by a due process requirement of notice and opportunity to be heard at any particular stage of the proceedings, are not judicial in character, personal notice is not necessary, and notice by a statute itself is sufficient. 16A C. J. S., Constitutional Law, § 650(a) (2), pp. 971 to 977; 84 C. J. S., Taxation, § 359, p. 692.

The decisions reveal that there are no categorical imperatives in this area. Taxation takes property. The balance must be struck between the time urgencies of governmental necessity and the taxpayer's right of resistance.

At the outset we observe that this is an ad valorem

tax, the amount depending on the value of the taxpayer's property. Notice is given by statute, and he has a full opportunity to be heard and to appeal as to valuation and equalization. The power of the Legislature or the unit board to make the levy is not challenged. But, it is said, this power to levy may be illegally or improperly exercised and no notice and opportunity are provided and that therefore the proceedings lack due process. The statute here under consideration bypasses the statutory procedure, section 77-1601, R. S. Supp., 1965, in which the county board of equalization makes the levies for cities, school districts, and other governmental subdivisions within 14 days after the action of the State Board of Equalization and Assessment. A taxpayer may appeal from this action but it is noted that the grounds of appeal are restricted and the collection process may not be impeded. §§ 77-1606 to 77-1610, R. R. S. 1943. It is this narrow or minimal deviation from established tax procedure that the plaintiffs attack. The rule is stated in Nickey v. State of Mississippi, 292 U. S. 393, 54 S. Ct. 743, 78 L. Ed. 1323, as follows: "There is no constitutional command that notice of the assessment of a tax, and opportunity to contest it, must be given in advance of the assessment. It is enough that all available defenses may be presented to a competent tribunal before exaction of the tax and before the command of the state to pay it becomes final and irrevocable. Wells, F. & Co. v. Nevada, 248 U. S. 165; Bristol v. Washington County, 177 U. S. 133, 146; McMillen v. Anderson, 95 U. S. 37; see American Surety Co. v. Baldwin, 287 U. S. 156, 168."

The application of this rule is well stated in 16A C. J. S., Constitutional Law, § 650(a) (2), p. 977, as follows: "Due process is afforded if the taxpayer has an opportunity to question the validity or the amount of an assessment before the amount is determined, or at any subsequent proceedings to enforce its collection, or subsequent to collection in a suit for refund of taxes paid

under protest, or at any time before liability for the tax becomes finally and irrevocably fixed."

We have long followed this rule in Nebraska. In County of Douglas v. State Board of Equalization & Assessment, 158 Neb. 325, 63 N. W. 2d 449, a general tax case, we said: "The following language in the case of Hacker v. Howe, 72 Neb. 385, 101 N. W. 255, is also pertinent: 'An owner is not deprived of his property without due process of law by means of taxation, if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings, either before that amount is finally determined, or in subsequent proceedings for its collection.'" That the right to collateral attack alone is sufficient to constitute due process is apparent from Hacker v. Howe, 72 Neb. 385, 101 N. W. 255. The State Board of Equalization and Assessment raised values and there was no appeal provided. Said this court: "He certainly is not denied due process of law if the courts are open to him in which he may try the question of the scope of action and the power of the state board to equalize the valuation of properties as between the different counties so as to bring about uniformity and equality of taxation."

Any doubt in this matter is laid to rest by State v. Several Parcels of Land, *supra*. There the required statutory notice of the meeting of the county board of equalization was not given and the taxpayer asserted that therefore he was denied his opportunity to be heard before the levy and the right to appeal. This court said: "Again, it cannot be said that due process of law is lacking, in proceedings for taxation, although the statutory notice is omitted at some particular stage, if the maxims of the law provide an alternative remedy which is sufficient to correct any wrong done. As a safeguard for the protection of a taxpayer, our legislature made provisions, now appearing as section 11061, Ann. St. 1907, which gives to a taxpayer the right to an injunction in the event that the objectionable tax, or some part

thereof, be levied or assessed for an illegal or unauthorized purpose."

The taxpayer's opportunities to be heard and his remedies have been been considerably expanded since this case, both collaterally and directly. If taxes are levied without authority of law, their collection may be enjoined. Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. Section 77-1735, R. R. S. 1943, our refund statute, creates a direct cause of action in the tax proceedings by which he may test the validity, *for any reason,* of a tax or any part thereof. Under this section, for example, he may test special assessments or benefits in an improvement district. Loup River Public Power Dist. v. County of Platte, 144 Neb. 600, 14 N. W. 2d 210. Section 77-1736, R. R. S. 1943, gives him an administrative remedy, as the treasurers of the different districts are required to refund the taxes, if, "it appears to the satisfaction of such authorities that the tax, or a part thereof, was clearly invalid." And, further, a suit under our statutes to enforce and collect the lien of taxes would afford the taxpayer notice and process and a judicial hearing as to his tax liability. Nor can he complain that the tax is collected before he is afforded relief. Collection does not irrevocably fix the charge under our tax procedure. There is no requirement of due process that he be given such a hearing and notice so that he may stay the collection process or that he be given an opportunity to be heard *before* any particular stage of the taxation process. Our statutes, with respect to hearings and appeals, specifically provide that collection shall not be stayed. See §§ 77-1606 to 77-1610, R. R. S. 1943. The necessities of government prevail. The balance of right remains, and it is only the balance of convenience that is struck against the taxpayer. The fact that he is required to take affirmative action does not deny him due process.

We point out that our consideration here is commensurate with the whole breadth of plaintiffs' attack. The

establishment of a deviation from our customary statutory levying procedures could be answered by pointing out that we have recently held that in fixing levies for cities and other political subdivisions that the county board of equalization is restricted to the powers granted it under the statute, that it has a mandatory ministerial duty conferred by legislative power to fix the levy at the number of mills certified to it. The county board of equalization has no standing to question those matters lying within the discretionary legislative power of a city or political subdivision nor to determine as a quasi judicial body the legality or illegality of a tax levy made by a political subdivision to whom the Legislature has entrusted the legislative power. State ex rel. City of Omaha v. Lynch, 181 Neb. 810, 151 N. W. 2d 278; Municipal University of Omaha v. County Board of Equalization, 181 Neb. 881, 151 N. W. 2d 924. An opportunity to be heard, at this point, would be futile and therefore unnecessary. It follows, therefore, that plaintiffs' attack embraces the question of due process in our whole normal tax levying procedure, and we have considered it so.

What we have said disposes of all of the contentions of plaintiffs in this respect because our tax procedure provides for more than the minimum requirements of due process. However, out of deference to the able and persuasive argument of counsel in this case we will discuss two further matters in this portion of the argument. Plaintiffs strenuously argue that the statute does not provide when the levy shall be certified to the county treasurer. This is really an argument that he must be notified at a definite or within a specific period of time. But he is not entitled to be heard at any particular stage of the tax procedure. The statutes give him notice within the time limits of his required opportunity to be heard which is only before the tax becomes irrevocably fixed. The statute, section 79-2210, R. S. Supp., 1965, notifies him of the tax, by whom the levy

is made, to whom it is certified, "who shall collect the same as other taxes are collected." The statutes tell him when taxes go on the books, open to public inspection, when they are due and delinquent. This is sufficient. Again plaintiffs are arguing for mere convenience, and not demonstrating anything that destroys their rights.

Plaintiffs cite McCord v. Marsh, 108 Neb. 723, 189 N. W. 386, and Summerville v. North Platte Valley Weather Control Dist., 170 Neb. 46, 101 N. W. 2d 748. Neither one of these cases is a tax case and are therefore clearly not applicable to the rules of due process as to taxation procedure. But even if they were, the holdings therein do not apply here. Summerville was an improvement district case, organized by private individuals pursuant to statute. A holding that due process requires a tribunal with notice and an opportunity to be heard before a determination of public convenience and necessity, private benefits, and whether lands should be included in the district, in no way relates to the requirements of due process in establishing a tax procedure for the levying and collection of general taxes. McCord v. Marsh, *supra,* by maximum import holds that hearings of the county board of equalization provided by statute satisfy due process. By so holding the court did not hold that something less or different might not also be due process. As we have pointed out the taxpayer here has a full opportunity to resist the tax before it becomes irrevocably fixed as a charge against his property but he has no due process right to resist it before any particular stage of the tax process, unless given by statute or suit by injunction.

Plaintiffs argue, in a separate section of their brief, that L.B. 301 is unconstitutional because no notice and hearing or tribunal is provided for a determination by the county officials preparing the tax lists of the number of "school age" children in the district residing in each county where there is a joint school district com-

prised of parts of two or more counties. The law provides that the school district shall belong to the educational service unit of the county having the greatest number of children residing in the school district. It is asserted that this determination is "adjudicative" and requires an antecedent hearing with notice. The determination of the number of "school age" children in a school district is not an adjudicative fact and requires no judicial hearing. School Dist. No. 23 v. School Dist. No. 11, 181 Neb. 305, 148 N. W. 2d 301. And the further determination of the number in the district residing in each county does not alter this holding. We do not imply that if the determination was "judicial" in nature that such notice and hearing would be required. Unless provided by statute, due process does not require such a hearing prior to the levy and collection of a general tax. Again, plaintiffs' cited cases are not applicable because they are not tax cases and are distinguishable for the reasons hereinbefore given.

Finally, plaintiffs claim L.B. 301 is unconstitutional because it creates corporations by special law. We assume, without deciding, that the educational service units are corporations and that this is a special law. Article XII, section 1, of the Constitution of the State of Nebraska, provides in part: "The Legislature shall provide by general law for the organization, regulation, supervision and general control of all corporations, * * *. No corporations shall be created by special law, nor their charters be extended, changed or amended, *except those corporations* organized for charitable, educational, penal or reformatory purposes, which are to be and remain under the patronage and control of the state." (Emphasis supplied.) The meaning of this provision is so clear as to hardly require argument. The educational service units are educational in purpose and clearly embraced in the exceptions. Plaintiffs argue a rule of statutory construction that the exceptions apply only to the words or phrases immediately preceding, and that

therefore the exception applies only to changes or amendments to corporation charters. Such an unreasonable interpretation would result in holding that no corporation at all could be created by special law, but that charters could be amended by special law to achieve the same purpose. Of course, the plain meaning of this constitutional provision is that you cannot *create* a corporation by special law, nor may you circumvent the prohibition by amending a charter by special law. A special law cannot create a corporate charter; a special law cannot amend an existing charter. By its very terms, the provision prohibits either creation or change by special law. The exceptions apply to either or both. Nor can we accept the plaintiffs' interpretation of the word "organized" as meaning charters of corporations already organized, thus excluding the exceptions application to the creation of corporations. This, of course, is sematical nitpicking. It flies in the face of the meaning of the provision. The words "those corporations" obviously include the "corporations" mentioned in the *creation* provision. And in the first sentence of this provision "organization" is used in the generic sense. It does not say "provide for the creation, organization, etc.," but simply refers to the general legislative power to organize. If plaintiffs' interpretations were correct and organization simply means subsequent steps after creation, then the Legislature would have no power to create corporations, an absurd result. Plaintiffs' interpretation would prohibit the legislative formation of school districts, which are corporations under our law. Rules of statutory construction are created to resolve ambiguities, not create them. We hold that the formation of the 19 educational service units and their geographical boundaries as established in L.B. 301 was a proper exercise of legislative power and within constitutional limits.

We therefore hold that L.B. 301, now sections 79-2201 to 79-2212, R. S. Supp., 1965, is constitutional in all

respects challenged. The judgment of the district court is correct and is affirmed.

AFFIRMED.