CITY OF DICKINSON, a North Dakota Municipal Corporation, Plaintiff and Appellee,

v.

STATE BOARD OF EQUALIZATION, and Hon. Arthur A. Link, as Governor of the State of North Dakota and Chairman of the State Board of Equalization, and Hon. Byron L. Dorgan, as Tax Commissioner of the State of North Dakota and Secretary of the State Board of Equalization, Defendants and Appellants,

and

Dolores Mischel, as Auditor of the County of Stark, a North Dakota Political Subdivision, Defendant and Appellee.

Civ. No. 9462.

Supreme Court of North Dakota.

July 26, 1978.

Kenneth M. Jakes, Sp. Asst. Atty. Gen., Bismarck, for defendants and appellants.

Maurice R. Hunke, Dickinson, for plaintiff and appellee.

SAND, Justice.

The North Dakota State Board of Equalization, through its chairman, Arthur A. Link, Governor of the State of North Dakota, and its secretary, Byron L. Dorgan, Tax Commissioner [hereinafter State Board] appealed from a Burleigh County district court judgment dated 30 November 1977 which adjudged, declared and decreed the proceedings of the State Board dated 19 September 1977 null and void as the same applied to business and residential real estate within the city of Dickinson.

The State Board held its annual meeting on 9 August 1977 pursuant to the provisions of § 57–13–03, North Dakota Century Code, as amended by Chapter 514 of the 1975 Session Laws, which provides as follows:

"The state board of equalization shall meet annually on the second Tuesday in August at the office of the state tax commissioner, and then shall examine and compare the returns of the assessment of taxable property as returned by the several counties in the state, and shall proceed to equalize the same so that all assessments of similar taxable property shall be uniform and equal throughout the state at the full and true value thereof in money or at such percentage of the full and true value as may be required by law."

However, because the tax commissioner's office could not accommodate the large number of people in attendance, the meeting was held in the large auditorium of the State Highway Department building located nearby within easy walking distance. (No issue is made of this fact.)

Following the 9 August 1977 meeting, the State Board made percentage increases or decreases, as it deemed appropriate, in the aggregate assessed value of the different classes of taxable property in the counties of the state of North Dakota. Among the changes was a ten percent decrease of business and residential real estate taxable property in Stark County. The State Tax Commissioner, as secretary of the State Board, signed an instrument entitled "Abstract of Proceedings of State Board of Equalization Real and Personal Property for the year 1977" dated 19 September 1977 and sent a copy to the Stark County auditor. A copy of the same abstract was not sent to the city of Dickinson and other cities in Stark County.[1]

The city of Dickinson instituted an action against the State Board of Equalization alleging several irregularities and seeking a final and permanent injunction restraining the defendants (State Board of Equalization and Stark County Auditor) from implementing and effectuating the decision of the State Board of Equalization as it applies to the city of Dickinson.

The city of Dickinson also applied for and obtained a temporary restraining order, together with an order to show cause why the restraining order should not be made permanent, which was served upon the Board. The Board made its return to the order to show cause and at the same time moved to dismiss the action.

The order to show cause hearing was held on 15 November 1977 in Burleigh County district court.

The trial court observed at the hearing that the matter presented only a question of law considering a construction of § 57–13–05, NDCC, as to prior notice and that there were no essential disputed questions of fact. The court in the efficient judicial administration of justice treated the subject matter as if the plaintiff had moved for summary judgment pursuant to Rule 56, North Dakota Rules of Civil Procedure. The court stated in its order for judgment that § 57–13–05, NDCC, contemplated that "any city council or board of city commissioners" is entitled to prior notice and an opportunity to be heard prior to the Board taking any final action to increase or decrease the valuation of taxable property within those districts.

The summary judgment ordered and decreed that the action of the Board decreasing the assessed value of real property within the city of Dickinson was null and void; and that if the Board proposed to make any changes in the assessment of the taxable real estate within the city of Dickinson it would first be required to give notice to the city of Dickinson of this intention. It also dissolved, terminated and extinguished the prior restraining order, because the action of the State Board of Equalization was declared null and void. The judgment also directed the auditor of Stark County to proceed with the statutory duties in accordance with the 1977 assessed valuations of the business and residential real estate within the city of Dickinson as previously equalized by the Stark County board of equalization without any increase or decrease therein. The State Board of Equalization appealed.

On appeal, the State Board contended and argued that neither constitutional due process nor statutory law required the State Board of Equalization to give notice to any taxing district prior to increasing or decreasing the assessments of taxable property and that the trial court erred by holding that such prior notice was required.

The city of Dickinson contended, however, that there is no longer any justiciable

---

1. Section 57–13–07, NDCC, requires only a copy to be sent to county auditors, but not to cities.

controversy remaining and that the subject matter has been rendered moot by subsequent events, particularly as a result of the judgment ordering and decreeing that the Stark County auditor proceed with the duties without taking into account the decreases made by the State Board of Equalization.

On the question of mootness, we do not have sufficient evidence before us nor does the record indicate that the subject matter has been rendered moot. We will therefore proceed to the principal issue whether or not notice to the taxing district is required, as contended by the city of Dickinson.

The issue of prior notice as a constitutional due process requirement has been settled by the United States Supreme Court in *Bi-Metallic Investment Company v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), wherein Justice Holmes stated:

"Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached, as it might have been by the state's doubling the rate of taxation, no one would suggest that the 14th Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body intrusted by the state Constitution with the power. In considering this case in this court we must assume that the proper state machinery has been used, and the question is whether, if the state Constitution had declared that Denver had been undervalued as compared with the rest of the state, and

had decreed that for the current year the valuation should be 40 per cent higher, the objection now urged could prevail. It appears to us that to put the question is to answer it. There must be a limit to individual argument in such matters if government is to go on."

To this we add that we must not only recognize and accept our representative form of government, but we must permit it to function. If the government is not responsive the remedy basically rests with the election process.

The *Bi-Metallic* case, *supra*, was again recognized by the United States Supreme Court in *United States v. Florida East Coast Railway Company*, 410 U.S. 224, 35 L.Ed.2d 223, 93 S.Ct. 810 (1973), as the prevailing law of the land. It has been so recognized by numerous state courts since then.

The South Dakota Supreme Court in *Beveridge v. Baer*, 241 N.W. 727, 730 (S.D. 1932), after quoting from *Bi-Metallic, supra*, and referring to subsequent cases, said:

"These cases, because of the necessities of government in matters of taxation, extend the general rule that, wherever actual notice is impracticable, the requirement of due process is satisfied by substituted or constructive notice to a point where the only constructive notice is that contained in the statutes fixing the time of meeting of the board."

The court, nevertheless, concluded that where the power to raise individual assessments is given to a state board of equalization some form of notice to the individual is required where the state board is raising or lowering individual assessments as distinguished from all of the property or a class of property within a taxing district.

In another case, the South Dakota Supreme Court, in *Common Council of City of Watertown v. Department of Finance*, 241 N.W. 731, 733 (S.D.1932), said:

"We are of the opinion that, where the statute vests in the state board of equalization the power to raise the assessment of all the property of a class within an entire taxing district, practical necessities

do away with the requirement of notice to the individual, except as the individual has notice by reason of the fact that the statute fixes the time of meeting of the board."

The Annotation in 24 A.L.R. 331, 333, which analyzed a number of cases, states that:

".  .  . notice to individual property owners affected is not required, where a general increase is made by a board of equalization or review of the assessed valuation of all the taxable property in a given division or district, the statutes being generally construed as not requiring such notice, and the requirement being held not essential to due process of law."

A supplemental annotation, based on additional case law, is found in 84 A.L.R. 197, 199:

"No distinction should be made between cases where a state board of equalization increases the assessed valuation of the aggregate property in a county, and cases where it increases merely the valuation of a class or classes of property in the county, as regards to individual property owners affected, such notice not being necessary, in the absence of statute."

See also, 72 Am.Jur.2d *State and Local Taxation* § 821, page 332, and 84 C.J.S. *Taxation* §§ 503b, c, and 504.

The Supreme Court of Iowa, in *Board of Supervisors of Linn County v. Department of Revenue*, 263 N.W.2d 227 (Iowa 1978), held that notice and an opportunity to be heard was not a constitutional prerequisite to the application of an equalization order to assess property values, and that the equalization procedure did not constitute an impermissible delegation of legislative authority. It further held that because the department of revenue functions legislatively in equalizing assessment of property values on a state-wide basis, the procedural safeguards provided were not constitutionally necessary. The Iowa court, after referring to the *Bi-Metallic* case, *supra*, stated that due process does not require avenues

for protest at every stage of the taxation process where the taxpayers were provided full opportunity to protest the assessments at an earlier proceeding, and that as a matter of due process the opportunity to protest need not be made available again when the assessments are adjusted on a state-wide basis.[2]

The Iowa court further observed that Justice Holmes' opinion has today assumed major importance in administrative law as its foundation for the different treatment given legislative functions as opposed to adjudicative or quasi-judicial responsibilities. After citing an impressive list of cases, the Iowa court concluded that the department of revenue was acting and functioning legislatively in equalizing assessed property values on a state-wide basis.

The Nebraska Supreme Court has decided an impressive number of cases relating generally to the subject matter under consideration, but because the statutory provisions of Nebraska are substantially different than those of North Dakota the case law developed is not very helpful. The Nebraska statute, as pertaining to the state board, provides that:

".  .  . the board shall issue a notice to the counties which the board deems either undervalued or overvalued, and shall set a date for hearing at least 5 days following mailing of such notice. .  ."

It is interesting to note that even with this statutory provision the Nebraska Supreme Court, in *Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972), held that the notice required to be given by the county auditor to the individual taxpayers did not apply to the state board of equalization and assessment where the changes in classes of property or percentages were over a whole taxing district made by the state board. The court stated:

"Nor do the constitutional requirements of due process make such notice mandato-

---

**2.** Sections 57–09–04, 57–11–03, and 57–12–06 require notice to both individuals or local boards, as the case may be, before assessments may be increased.

ry. *Frye v. Haas*, 182 Neb. 73, 152 N.W.2d 121."

■ We are satisfied that where the statute specifies the time and place when the state board shall meet, as does § 57–13–03, NDCC, as amended, that constitutional due process does not require the board to give notice to the various taxing districts before increasing or decreasing the value of taxable property within the districts or state.

In examining the provisions of Chapter 57–13, NDCC, relating to the powers and duties of the state board of equalization, we find no statutory provision which requires the giving of such notice. We do note, however, that where the board is concerned with individual valuations of property, § 57–13–04(4), subdivisions (a) and (b), set out the procedures which will govern or which are to be followed. However, in the instant case we are not involved with the action of the state board on individual property as distinguished from all or a class of property within a taxing district or state.

■ We conclude that neither constitutional law or statutory provisions required the Board to give notice to the taxing districts before increasing or decreasing the assessed valuation of the property within such districts.

We can sympathize and understand the dilemma in which the city of Dickinson and other local taxing districts found themselves where the value of property is assessed at substantially lower than true value, as defined in § 57–02–01(4), NDCC, and as required by § 57–02–27, NDCC, as amended, and then subsequently reduced to 50% for purposes of applying the mill levy as provided for in § 57–02–28, NDCC. Generally, governing bodies which are also local taxing districts, such as cities, are subjected to mill limitations and because the property has been systematically assessed substantially lower than true and full value the cities have been required to apply the maximum levy. Consequently, if the State Board reduces the assessed valuation of the property, the cities which have been levying at maximum mill levies will be unable to raise the necessary revenue to meet their

governmental obligations, and therein lies the problem. But this is not a matter for the judiciary to solve in this instance. This is basically a legislative matter.

For the reasons stated in the opinion, we conclude that the trial court erred in rendering the judgment dated 30 November 1977, and accordingly such judgment is set aside and the case is remanded to the district court to comply with this opinion.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.