REQUESTED BY: Albert E. Maul, Thurston County Attorney.
Does the county board of equalization or the board of directors of a natural resources district have the authority to determine the specific mill levy that will be imposed for purposes of raising money to fund a natural resources district budget?
The board of directors of a natural resources district is authorized by law to determine the specific mill levy which will be imposed in order to fund the operating budget of a natural resources district.
In your question you have indicated that there is a dispute between the board of directors of the natural resources district which in part encompasses Thurston County and the County Board of Equalization of Thurston County over the correct procedure to be followed in determining the mill levy necessary to raise the sums required to support natural resources district operations in your county.
Specifically, it appears that the county board of equalization contends that a natural resources district, and presumably any other political subdivision of the state lying wholly or partly within the county, is required to provide the county board of equalization with a complete budget statement showing the total amount of money to be raised and expended during the upcoming fiscal year. Once such a political subdivision has provided to a county board of equalization that information, the county board of equalization then would determine what mill levy would be necessary to fund the budget for that political subdivision.
Conversely, the position of the natural resources district appears to be that it is authorized by law, after following the appropriate budgetary process, to determine what mill levy shall be established and to certify to the county board that mill levy. Section 2-3225, R.R.S. 1943, provides:
 "Each district shall have the power and authority to levy a tax of not to exceed one mill annually on all of the taxable property, except intangible property, within such district. . . . When adopted by the board, the levy shall be certified by the secretary to the county clerk of each county which in whole or in part is included within the district. Such levy shall be handled by the counties in the same manner as other levies, and proceeds shall be remitted to the district treasurer. Such levy shall not be considered a part of the general county levy and shall not be considered in connection with any limitation on levies of such counties."
Under the theory advanced by the natural resources district, it would send to the county board a figure of, for instance, .9 mills.
The county board in performing their functions under section77-1601, R.R.S. 1943, would then adopt that levy. Under the county's theory the natural resources district would be required to certify a budget statement which would disclose the amount of money sought to be raised by the district for the upcoming fiscal year in dollar terms. For instance, one million, two hundred thousand dollars. The county board would then calculate the mill levy.
It seems clear to us that the natural resources district is authorized to certify to the county board of equalization a specific amount of mills. In the first instance, the county board can exercise only those powers which are expressly granted to it by statute and statutes conferring power and authority upon the county board of equalization in these circumstances are to be strictly construed. SeeSpeer v. Kratzenstein, 143 Neb. 300, 9 N.W.2d 306; Bassv. County of Saline, 171 Neb. 538, 106 N.W.2d 860. The only authority granted to the county board of equalization is that contained within section 77-1601 which in part provides:
 ". . . the county board of equalization shall make the levy of taxes for county purposes. The levy shall include all county taxes necessary to cover the amounts required to be raised by taxation, as provided in the annual budget of said county for the current year, and shall include all township, city, school district, precinct, village, road district, and other taxes required by law to be certified to the county clerk and levied by the county board of equalization; . . . ."
In addition to these statutes, one can refer for guidance to section 23-921, et seq. which provides certain guidelines for the preparation and adoption of budgets by all political subdivisions. In your letter you direct our attention to section 23-927. In that section the terms governing body and levying board are utilized. You seem to indicate that you view the levying board as being exclusively the county board. For that interpretation you cite to section23-922(1) and (2) which respectively define governing body to include a county board and the board of directors of the natural resources district and a levying board to mean any body which has the power or duty to levy tax. We must point out that the natural resources district under section 2-3225
has, `the power and authority to levy a tax.'
Nearly this precise question was presented to the Supreme Court in the case of State ex rel. City of Omaha v.Lynch, 181 Neb. 810, 151 N.W.2d 287. In that case the City of Omaha has certified to the county board of equalization a levy of 22 mills. That was based on a particular valuation of the property within the confines of the City of Omaha.
The State Board of Equalization and Assessment had ordered an increase of 24 percent in the valuation of real property subject to the tax levy of the City of Omaha. The city had determined that they were going to appeal that finding by the State Board of Equalization and Assessment. The county board determined the amount of money sought to be raised by the mill levy certified to it by the City of Omaha and reduced the City of Omaha mill levy to 18.71 mills. The Supreme Court in resolving this problem in favor of the City of Omaha and in reestablishing the mill levy at 22 mills stated:
 "`The levy of a tax is not a judicial function, nor is it merely the ministerial action of ascertaining the rate per cent; but it is a legislative function to be exercised only by the state or some inferior political division to which the state has delegated the power.'. . . [Citations omitted.]
 "In our opinion, the Legislature did not intend to grant to a county board of equalization any legislative power with respect to a city tax levy nor to divide such power, or permit a dual exercise of it. The duties of the county board, under section 77-1601, R.R.S. 1943, are intended to be ministerial.
 The statutes do not require that the city submit its budget, but require only the certified mill levy. Neither do we believe the Legislature intended that the county board act as a quasi judicial body to review and determine questions of legality or procedural budgetary requirements of a home rule city."
It is clear in this case that the court deemed the city council to be the levying body.
A similar result was reached by the Supreme Court inFrye v. Haas, 182 Neb. 73, 152 N.W.2d 121, which involved educational service units. In that case a statute under attack provided:
 "The board, for each educational service unit, may levy a tax of not to exceed one mill on the dollar on the assessed valuation of all property except intangible property within its geographic unit. The amount of any such levy shall be certified by the secretary of the board to the county treasurer of each county within the educational service unit who shall collect the same as other taxes are collected and remit the proceeds thereof to the county treasurer who is ex officio treasurer of the county board."
While the specific question was not directly before the court in that case but rather an issue involving due process, it is clear that the Supreme Court once again assumed that the governing body of the educational service units was the levying board and not the county board of equalization.
Once again a similar result occurred in Municipal Universityof Omaha v. The County Board, 182 Neb. 881,151 N.W.2d 924, in which the Municipal University of Omaha had sued the county board for reducing its request for funds from 2 mills as certified by the governing board of the university to 1.71 mills. The Supreme Court indicated that the 2 mills certified by the university board were the proper levy.
In summing up these and other cases of the like, it can be said that the county board of equalization has the duty of establishing the mill levy for the county. It has no responsibility, and certainly no authority, to establish the mill levy for governmental subdivisions authorized to levy a tax. It is not a quasi-judicial body vested with the power to review the action of other governmental units. Rather, it is a mechanism for combining all of the taxes to be raised by various political subdivisions which have the same or similar land situated within their boundaries into one convenient levy so that the taxpayer can make his payment for all of the various subdivisions in one place. That convenience aspect does not extend or enlarge any powers granted to the county board to supervise or in any other way impinge upon the power and authority granted to autonomous political subdivisions.
An additional argument supporting the authority of the board of directors of the natural resources district to establish a specific mill levy as opposed to having the county board of equalization establish such levy, is that all natural resources districts include lands from more than one county. If each county board within the district were to establish a separate mill levy within their individual county boundary, there would be a nonuniform levy, in all probability, for the natural resources district as a whole, which would violate the uniformity required by Article VIII, section 1 of the Constitution of the State of Nebraska.
For the foregoing reasons, it is our conclusion that a governing board of a political subdivision given the authority to levy such as the authority contained within section2-3225, R.R.S. 1943, authorized that political subdivision to specify in terms of mills the levy to be made on all property subject to taxation within its boundaries.