REQUESTED BY: Senator Ron Raikes
Nebraska State Legislature
You have requested our formal opinion on the constitutionality of legislation that would reestablish the former Class I school districts in Nebraska. In your opinion request letter, you suggest that legislation which applies only to the former Class I districts would create a "closed class," in violation of the Nebraska Constitution. From discussions with your staff, we understand that you wish us to limit our analysis as to whether certain provisions of AM 826 to LB 658, an amendment introduced by Senator Dierks, create a closed class. Our response to your inquiry is set forth below.
I. BACKGROUND
On June 3, 2005, the Nebraska Legislature passed Legislative Bill 126 over the Governor's veto. Among other provisions, LB 126 required the State Committee for the Reorganization of School Districts ("State Committee") to issue orders, on or before December 1, 2005, dissolving all Class I school districts and attaching the territory of each Class I school district to one or more Class II, III, IV, and VI school districts. The effective date for such dissolution orders was June 15, 2006. LB 126 also required the State Committee, on or before December 1, 2005, to issue orders reclassifying each Class VI school district into a new Class II or Class III school district, also effective June 15, 2006.
In response to the passage of LB 126, a group of Nebraska citizens organized a referendum petition effort to repeal LB 126 in its entirety. The referendum petitions to repeal LB 126 were circulated for signature across the state, and were submitted to the Nebraska Secretary of State in September 2005. After the petition signature verification process, the Secretary of State determined that there were a sufficient number of valid signatures to place the referendum repealing LB 126 on the general election ballot in November 2006. However, the Secretary of State also determined that the referendum effort did not obtain sufficient signatures to suspend the operation of LB 126 pending the 2006 general election. On June 15, 2006, pursuant to the orders of the State Committee, Class I school districts were dissolved into their respective K-12 districts.
On November 7, 2006, the voters of Nebraska voted to repeal LB 126.[1]
II. AMENDATORY LANGUAGE AND THE CLASSIFICATIONS IT CREATES
The pertinent provisions of AM 826 provide:
Sec. 1. On the effective date of this act, the Class I, II, III, IV, V, and VI school districts which were organized as such immediately before December 1, 2005, shall be reorganized according to the boundaries on file with the State Department of Education on November 30, 2005.
Sec. 2. Section 1 of this act does not apply to any school district which was reorganized by means other than Laws 2005, LB 126, so long as the reorganization order was entered on or before November 30, 2005, notwithstanding the effective date of boundary changes of any such order.
Stated alternatively, sections 1 and 2 of AM 826 would require every Class I, II, III, IV, V, and VI school district which existed as a Class I, II, III, IV, V and VI school district immediately before December 1, 2005, to be reorganized according to the boundaries "on file"[2] with the Nebraska Department of Education ("NDE") on November 30, 2005. However, the reorganization mandate in section 1 does not apply to school districts reorganized by means other than LB 126, as long as the reorganization orders were entered into on or before November 30, 2005. It appears then that at least three statutory classifications are created by this language:
Classification 1: All school districts in the state in existence immediately prior to December 1, 2005, except those schools districts reorganized prior to November 30, 2005, by some means other than LB 126;
Classification 2: Those school districts in the state in existence immediately prior to December 1, 2005, which were reorganized prior to November 30, 2005, by some means other than LB 126; and
Classification 3: Those school districts in the state in existence immediately prior to December 1, 2005, which were reorganized by means other than LB 126, but pursuant to reorganization orders entered after November 30, 2005.
According to data we received from the NDE, there are school districts which fall within each of the three classifications established by AM 826.
III. ANALYSIS
A. Article III, § 18 of the Nebraska Constitution
The relevant provision of the Nebraska Constitution is art. III, § 18, which provides in pertinent part:
The Legislature shall not pass local or special laws in any of the following cases, that is to say:
* * *
Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
A legislative act that applies only to particular individuals or things of a class is special legislation. Haman v. Marsh, 237 Neb. 699,709, 467 N.W.2d 836, 844 (1991). A legislative act can violate Neb. Const. art. III, § 18, as special legislation in one of two ways: (1) by creating a totally arbitrary and unreasonable method of classification, or (2) by creating a permanently closed class. Id. at 709,467 N.W.2d at 845; State v. Popco, Inc., 247 Neb. 440, 443, 528 N.W.2d 281, 283
(1995). It seems to us that there is a strong argument that each statutory class of school districts created by sections 1 and 2 of AM 826 represents a permanently closed class.
In support of our conclusion, we rely on City of Scottsbluff v. Tiemann, 185 Neb. 256, 175 N.W.2d 74 (1970). In Tiemann, the Court addressed the constitutionality of LB 1293, a 1969 act which directed cities of the first class with populations of more than 13,000 residents located in counties having a population of more than 33,000 inhabitants, according to the 1960 federal census, to establish a municipal court. The Supreme Court found that under the 1960 census, only two of the 22 first class cities in Nebraska, Scottsbluff and Grand Island, met the population requirement in the bill. Because LB 1293 "classif[ied] cities for legislative purposes in such a way that no other city of the first class may be ever added to the class designated," the Supreme Court held that LB 1293 constituted special legislation. Tiemann at 263,175 N.W.2d at 79.
The Tiemann Court further stated, quoting State ex rel. Conkling v. Kelso, 92 Neb. 628, 632, 139 N.W. 226, 227-228 (1912):
The rule appears to be settled by an almost unbroken line of decisions that a classification which limits the application of the law to present condition and leaves no room or opportunity for an increase in the numbers of the class by future growth or development is special and a violation of the clause of the Constitution above quoted. It follows that the limitation in the act to all county seats which had existed for 10 successive years at the time of the passage of the act and not permitting the rule to be applied to other counties is equivalent to the naming of the county seats of that class and is therefore void.
AM 826 creates a situation analogous to the situation in Tiemann, where the applicability of the legislation involving the establishment of municipal courts was limited by the population requirements tied to a census produced years earlier. In Tiemann, the practical effect was that the legislation applied to only two cities out of twenty-two, and froze out the remaining twenty. In the present case, while drafted to give the appearance of inclusiveness, AM 826 does just the opposite. Under AM 826, the practical effect is that the legislation applies only to those school districts which existed on November 30, 2005.
In determining whether a class is closed, the Nebraska Supreme Court is not limited to the face of the legislation, but may consider the act's application. Haman at 717, 467 N.W.2d at 849. If the prospect that others will fall under the act is merely theoretical, and not probable, the act is special legislation. The conditions of entry into the class must not only be possible, but reasonably probable of attainment. Id. at 718, 467 N.W.2d at 849. Applying those standards, it appears to us that only a finite number of school districts fall within each statutory class set out above. No other school district can be added to the classifications in the amendment, or come under its operation because of the specified time, "November 30, 2005," set out in the amendment. As a result, we believe that it can be effectively argued that AM 826 creates permanently closed statutory classes in violation of art. III, § 18. Our conclusion in that regard is consistent with previous opinions of this office where we have considered the constitutionality of legislation containing classifications based upon specified times. See, e.g., Op. Att'y Gen. No. 01017 (April 19, 2001) (Legislation which extended ethanol credits to certain facilities "existing on or before December 31, 2000" constituted a closed class in contravention of art. III, § 18 of the Nebraska Constitution); Op. Att'y Gen. No. 98003 (January 9, 1998) (Bill which granted supplemental retirement benefits only to retirees who retired prior to a certain date was special legislation); Op. Att'y Gen. No. 97026 (April 29, 1997) (Bill which granted supplemental pension benefits only to retirees having twenty or more years of service as of the effective date of the act was special legislation).
B. Additional arguments
Proponents of AM 826 have advanced a number of arguments for the proposition that the amendment is constitutional. We will discuss those various arguments briefly.
First, it has been suggested that AM 826 does not create a permanently closed class because all school districts recreated by the amendment are subject to dissolution under existing statutes, or because the "class" of school districts at issue is subject to increase under a variety of other statutory provisions, e.g., Neb. Rev. Stat. §§ 79-403, 79-499, etc. This office has consistently argued throughout the course of the Class I litigation that recreation of Class I school districts was possible under the previous statutory framework, should LB 126 be repealed. However, the question in this instance is not whether other statutes currently in effect by virtue of the repeal of LB 126 will allow Class I districts to be dissolved or allow more Class I districts to be recreated. The question is whether, under AM 826, the number of school districts within each statutory class can be increased.[3] Under the amendment, the answer to that latter question is "no," because each classification created by AM 826 is limited by a date certain-November 30, 2005.
It has also been suggested that AM 826 does not create any classifications, it merely creates political subdivisions and specifies their boundaries, which the Legislature has unquestioned authority to do.
The Legislature's power, as it relates to the common schools in Nebraska, is found in art. VII, § 1 of the Nebraska Constitution, which states:
The Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years. The Legislature may provide for the education of other persons in educational institutions owned and controlled by the state or a political subdivision thereof.
In construing that constitutional provision, the Nebraska Supreme Court stated:
This provision of the Constitution leaves all matters pertaining to schools and school districts, their creation, dissolution, government, and control with the Legislature. In all such matters the State is supreme.
Farrell v. School Dist. No. 54, Lincoln County, 164 Neb. 853, 858,84 N.W.2d 126, 131 (1957) (emphasis added). Therefore, we have argued that school districts are entirely creatures of statute, and can be created or abolished by the Legislature as it wishes.
However, AM 826 does more than simply create school districts or specify their boundaries, as is the case with the Nebraska statutes pertaining to counties. See Neb. Rev. Stat. §§ 22-101 through 22-108
(1997, Cum. Supp. 2006). Instead, as discussed in detail above, AM 826 creates classifications among school districts, and treats one group of districts differently than another. For example, under that legislation, certain school districts in existence on November 30, 2005, which were affected by LB 126 could exceed particular budget limits, while other school districts could not. Therefore, we believe that those classifications in AM 826 are subject to the constitutional provisions relating to special legislation.
Finally, proponents of AM 826 rely on Frye v. Haas, 182 Neb. 73,152 N.W.2d 121 (1967), for the argument that creation of school districts falls under the special legislation provisions of art. XII, § 1 of the Nebraska Constitution, rather than the special legislation provisions of art. III, § 18. The proponents offer that argument because art. XII, § 1 contains an exception for corporations organized for "charitable, educational, penal or reformatory purposes."
The pertinent portions of art. XII, § 1 of the Nebraska Constitution provide as follows:
The Legislature shall provide by general law for the organization, regulation, supervision and general control of all corporations, * * *. No corporations shall be created by special law, nor their charters be extended, changed or amended, except those corporations organized for charitable, educational, penal or reformatory purposes, which are to be and remain under the patronage and control of the state.
(Emphasis added). The Frye case involved a taxpayer's challenge to the constitutionality of a statute creating educational service units in Nebraska. The plaintiff claimed that the bill creating those units, which were educational in purpose and which supported school districts, created corporations by an unconstitutional special law. The court ultimately rejected that claim, and held that educational service units fit within the exception created in art. XII, § 1 by the language emphasized above. In its discussion of that issue, the court stated, "[p]laintiffs' interpretation would prohibit the legislative formation of school districts, which are corporations under our law." Frye at 82,152 N.W.2d at 128. The proponents of AM 826 point to Frye and the specified constitutional language, and argue that the amendment merely creates school districts, and therefore, it cannot constitute special legislation under art. XII, § 1. Those proponents also seem to argue, on the basis of Frye, that art. III, § 18 of the Nebraska Constitution does not apply to school districts, and that they are governed solely by art. XII, § 1.
We find the proponents' arguments based upon the Frye case unpersuasive. First of all, the legislation at issue in that case provided, in part:
Sec. 1. In order to provide supplementary educational services to local school districts, there are hereby established nineteen educational service units. The official name of such units shall be Educational Service Unit No. ___ of the State of Nebraska, the individual number thereof to be determined as provided in section 2 of this act.
Sec. 2. The educational services units established by section 1 of this act shall be as follows:
(1) The counties of Cedar, Dixon, Dakota, Wayne, Knox, and Thurston;
(2) The counties of Cuming, Burt, Dodge, and Saunders;
(3) The counties of Washington, Douglas, Sarpy, and Cass;
* * *
1965 Neb. Laws LB 301, §§ 1, 2. Obviously, that statutory language from 1965 is much different than the language at issue in AM 826, because it only creates educational service units and specifies their boundaries. In contrast, as discussed previously, AM 826 goes beyond the mere creation of school districts, and establishes classifications of those districts which are treated differently in the legislation. Therefore, we do not believe that the rationale from the Frye case applies to AM 826. Moreover, art. III, § 18 of the Nebraska Constitution provides that "[t]he Legislature shall not pass local or special laws in any of the following cases, that is to say: . . . Providing for the management of Public Schools." That latter language certainly does not support the notion that legislation affecting school districts is not governed by art. III, § 18. In fact, many of the provisions of AM 826 could be fairly characterized as "providing for the management of public schools," e.g., Section 13 of the amendment which pertains to contracts rights of certificated employees.
IV. Conclusion
There are no Nebraska cases which deal with the precise facts and issues presented by your opinion request. Therefore, as is often the case with this type of inquiry, our "opinion" is really our best estimate of what Nebraska courts would do with the questions under consideration. In that regard, we believe that the better analysis in this instance is that AM 826 involves a closed class in contravention of art. III, § 18 of the Nebraska Constitution. However, we also cannot say, with absolute certainty, that our courts might not agree with some of the arguments presented by the proponents of AM 826, particularly those arguments based upon art. XII, § 1 of the Nebraska Constitution.
Sincerely,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General Chief, Legal Services Bureau
 Leslie S. Donley Assistant Attorney General
[1] For purposes of this opinion, a detailed analysis of the state court litigation which sought to declare portions of LB 126 unconstitutional is unnecessary. However, in Pony Lake School District 30 v. State Committee for the Reorganization of School Districts,271 Neb. 173, 710 N.W.2d 609 (2006), cert. denied, 126 S. Ct. 2058 (May 15, 2006), the Nebraska Supreme Court upheld the constitutionality of LB 126 in the face of multiple constitutional challenges to that legislation by its opponents. There is also a federal case on appeal in the Eighth Circuit Court of Appeals that may have some effect on any proposed legislation relating to the reestablishment of Class I school districts. In Nolles, et al. v. State Committee, et al., No. 06-4093NE, a different set of plaintiffs filed an action in the federal district court in Nebraska seeking a declaration that the issuance of dissolution orders under LB 126 violated the plaintiffs' constitutional rights and that those orders are null and void for that reason. The federal district court held that plaintiffs' claims were precluded by the earlier state court litigation, and were without merit. If the district court's conclusion is overturned by the Eighth Circuit, the orders of the State Committee may be rendered null and void, thus possibly recreating Class I districts as they existed on November 30, 2005. The Nolles case is currently set for oral argument in the Eighth Circuit on May 17, 2007.
[2] We note that the county clerks are responsible for maintaining the official records of school district boundaries, not the NDE. See Neb. Rev. Stat. § 79-490 (2003).
[3] In that regard, the Nebraska Supreme Court stated in Haman that "[i]n deciding whether a statute legitimately classifies, the court must consider the actual probability that others will come under the act's operation." Haman at 717, 467 N.W.2d at 849 (emphasis added).