STATE OF NEBRASKA EX REL. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT, v. DANIEL C. LYNCH ET AL., APPELLEES.

151 N. W. 2d 278

Filed May 26, 1967. No. 36542.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, Walter J. Matejka, James E. Fellows, Allen L. Morrow, P. D. Spenceri, and Theodore L. Carlson, for appellant.

Donald L. Knowles, Arthur D. O'Leary, James M. Murphy, and Paul F. Peters, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action filed by the State of Nebraska on the relation of the City of Omaha, against the members of the County Board of Equalization of Douglas County, and the County Clerk and County Assessor. It seeks a writ of mandamus requiring the respondent County Board of Equalization to levy the number of mills for 1967 taxes certified and directed by the city. The district court entered a judgment of dismissal and the City of Omaha has appealed.

The City of Omaha is governed by a home rule charter. On August 2, 1966, the city council held a public hearing on the 1967 budget for the city. On August 16, after deliberations thereon, the council adopted the budget which provided for tax revenue and expenditures in the amount of $14,179,636, and certified a levy of 22 mills. On the preceding day, August 15, 1966, the State Board of Equalization and Assessment had ordered a 24 percent increase in valuation of real property subject to tax levy for the City of Omaha. As stipulated by the parties, the 22 mill levy, based on the ordered increase, would have produced tax revenue for the City of Omaha in the sum of $17,025,725. Contemporaneously with the certification of the levy, the council also resolved that the City of Omaha appeal the decision of the State Board of Equalization and Assessment with respect to valuation of property in Douglas County, Nebraska, and recited that "at the present time it is necessary to levy the full amount allowed because the City does not know what the final valuation of property will be at the time of levy; * * *."

On August 27, 1966, a special meeting of the council

was held, and motions were carried to reconsider prior resolutions and action taken. The council then passed a resolution to change estimated tangible property tax valuations for 1967, increased the tangible tax revenue resulting from the increased valuations, increased the general fund property tax levy to 16 mills and appropriated proportions of the additional revenue to various budgetary accounts, one of which was $1,719,368 for "Such items as outlined in the supplemental budget as the Council may designate." It also adopted the budget with the revisions and passed a resolution in which it again certified the tax levy for the City of Omaha for the year 1967 to the county clerk of Douglas County in the amount of 22 mills. On August 29, 1966, the board of equalization of Douglas County levied a tax of 18.71 mills for the City of Omaha for the year 1967 rather than the 22 mills certified to it by the city. This is the action by the county board of equalization which is here attacked.

The district court found for the respondents, denied relief, and dismissed the action.

Section 77-1601, R. R. S. 1943, dealing with the county tax levy provides in part: "After making the levy for such purpose, the county board of equalization shall make the levy of taxes for county purposes. The levy shall include all county taxes necessary to cover the amounts required to be raised by taxation, as provided in the annual budget of said county for the current year, and shall include all township, city, school district, precinct, village, road district, and other taxes required by law to be certified to the county clerk and levied by the county board of equalization; * * *."

Section 14-514, R. R. S. 1943, applicable to metropolitan cities provides in part: "The city council shall annually certify to the county clerk of the county in which the city is located, by resolution, the number of mills on the dollar upon the assessed value of all the taxable property in such city * * *, which the city desires to be

levied as taxation for all municipal purposes for the ensuing year; * * *."

The chapter in which that section appears was adopted in 1922 in toto as the Omaha Home Rule Charter. Section 5.07 of the home rule charter for the City of Omaha for 1956 is headed Tax Levy and provides in part: "The Council, on the basis of the budget as finally adopted, shall certify by adopting an appropriate resolution a single City of Omaha tax levy for the ensuing fiscal year, which single tax levy shall be sufficient so that total anticipated revenues plus receipts from authorized borrowing will at least equal total proposed expenditures."

The county board of equalization can exercise only such powers as are expressly granted to it by statute and statutes conferring power and authority upon the county board of equalization in these circumstances are strictly construed. Speer v. Kratzenstein, 143 Neb. 300, 9 N. W. 2d 306; Bass v. County of Saline, 171 Neb. 538, 106 N. W. 2d 860.

The purpose of the constitutional provision as to a home rule charter is to render a city independent of state legislation as to all subjects which are of strictly municipal concern. Eppley Hotels Co. v. City of Lincoln, 133 Neb. 550, 276 N. W. 196.

"The levy of a tax is not a judicial function, nor is it merely the ministerial action of ascertaining the rate per cent; but it is a legislative function to be exercised only by the state or some inferior political division to which the state has delegated the power." 84 C. J. S., Taxation, § 349, p. 679.

In our opinion, the Legislature did not intend to grant to a county board of equalization any legislative power with respect to a city tax levy nor to divide such power, or permit a dual exercise of it. The duties of the county board, under section 77-1601, R. R. S. 1943, are intended to be ministerial. The statutes do not require that the city submit its budget, but require only the certified

mill levy. Neither do we believe the Legislature intended that the county board act as a quasi judicial body to review and determine questions of legality or procedural budgetary requirements of a home rule city.

The problem here is complicated by the fact that the remedy of mandamus is not a writ of right and in determining whether or not the writ should issue, the court should consider the facts of the particular case, the nature of the exigency which calls for the exercise of the court's discretion, the consequences of the granting of the writ, and the nature and extent of the wrong which would result from its refusal. Such a writ will be issued ordinarily only to prevent injustice and not to promote it. In State ex rel. School Dist. v. Board of Equalization, 166 Neb. 785, 90 N. W. 2d 421, this court denied issuance of a writ of mandamus to compel a county board of equalization to restore a mill levy for a school district, where the effect of its issuance would be to compel the board of equalization to do an unlawful act. In effect, that case and similar cases have treated the action in the same context as though by a taxpayer challenging the legality or validity of the proceedings. They have only indirectly considered the original authority of the county board to alter a tax levy or amount determined by another political subdivision.

In considering the determination of the amount of a levy, this court said in C.R.T. Corporation v. Board of Equalization, 172 Neb. 540, 110 N. W. 2d 194: "In the very nature of things and as the pertinent statutes declare, there may only be estimates, which of course negative any thought that accuracy must be attained. The true test is that there shall be a reasonable and approximate estimate and determination made in the light of the known and reasonably ascertainable facts and also in the light of known and fairly anticipated conditions."

"The levying body has considerable discretion in fixing the tax amount, and the exercise of this discretion

will not be disturbed in the absence of an abuse thereof." 16 McQuillin, Municipal Corporations, Taxation (3d Rev. Ed.), § 44.97, p. 311.

Here the city council on August 15, 1966, was faced with a totally unexpected 24 percent increase in the valuation of real property which the city believed to be unjustified, contrasted with an originally proposed decrease of 14 percent as of the date of the city's budget hearings. The dilemma faced by the council was somewhat staggering. If the city's appeal from the valuation order was successful, but its levy was based on the valuations ordered by the State Board, the city would find itself over two million dollars short of its financial requirements, and faced with at least some possibilities of being unable to finance the deficit out of the following year's taxes in view of the closeness of its operation to maximum mill limits. On the other horn, if it based the levy on the original valuations, and if its appeal was unsuccessful, it might well anticipate being faced with taxpayers' suits for attempting to levy taxes amounting to approximately 5 percent of its total budget, for items which were not specifically allocated.

Originally the property tax statutes in Nebraska obviously were based on the assumption that valuations upon which levies were to be made were reasonably fixed and final at the time of the levy; or at least that very substantial changes would not occur through later appeals. That assumption is no longer valid.

Where the decision of the legislative body as to the amount of a tax levy is made at a time when the valuation of a substantial portion of the property upon which the levy is to be based is indefinite and uncertain, and judicial proceedings to challenge valuations are pending or probable, illegality or arbitrary and unreasonable action in setting the levy must be clearly demonstrated to warrant judicial interference with legislative power.

We think the action of the city council under the dilemma it faced, in the light of the known and reason-

ably ascertainable facts and circumstances and the possible consequences to the fiscal operations of the city, cannot be said to be unreasonable. We cannot believe the Legislature intended to promote dissention or dispute between separate taxing subdivisions of the state nor to divide or distort the legislative power of a home rule charter city as to its own taxes. The county board of equalization ordinarily has no standing to question those matters properly lying within the discretionary legislative powers of the city nor to determine as a quasi judicial body the legality or illegality of a tax levy made by a political subdivision to whom the Legislature has entrusted the legislative power. This conclusion is emphasized by the fact that any taxpayer may raise the issue in a direct action. See C.R.T. Corporation v. Board of Equalization, *supra*.

For the reasons stated, the judgment is reversed and the cause remanded with directions to enter an order commanding the respondents and each of them to amend and correct the levy made by the county board of equalization on August 29, 1966, to the number of mills certified by the resolution of the City of Omaha dated August 27, 1966.

REVERSED AND REMANDED WITH DIRECTIONS.