STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS,
ATTORNEY GENERAL OF THE STATE OF NEBRASKA,
RELATOR, V. STATE BOARD OF EQUALIZATION AND
ASSESSMENT OF THE STATE OF NEBRASKA ET AL.,
RESPONDENTS.

286 N. W. 2d 729

Filed December 28, 1979. No. 42862.

Paul L. Douglas, Attorney General, and Ralph H.
Gillan, for relator.

Clarence A. H. Meyer, for respondents.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN,
CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an original action brought by the relator,
the Attorney General of this State, against respond-
ents, the State Board of Equalization and Assess-
ment, the Governor, the Secretary of State, the State
Auditor, the State Treasurer, and the State Tax
Commissioner, challenging the constitutionality of
an amendment to Article VIII, section 1, of the Con-
stitution of the State of Nebraska. Respondents
filed an answer admitting the facts alleged in rela-
tor's petition, but denying relator's conclusions
drawn from those facts. Additional facts were stip-
ulated to between the parties. Relator then moved
for summary judgment. We sustain relator's mo-
tion.

The amendment giving rise to this litigation re-
sulted from action taken during a special session of

the Eighty-fifth Legislature, which convened on June 8, 1978. This special session was called by the Governor for the purpose of considering and, if deeming it advisable, enacting legislation relating to the following subjects: (1) To extend the operative date of section 328, L.B. 38, Eighty-fifth Legislature, First Session, 1977 (the Nebraska Criminal Code), to January 1, 1979. (2) To enact spending limitations on government budgets. During the special session, the Legislature adopted Legislative Resolution 1, which proposed an amendment to add the following language to Article VIII, section 1, of the Nebraska Constitution: "[W]hen a political subdivision authorized to levy a tax or cause a tax to be levied lies in two or more counties, and one or more of such counties have not completed a general reappraisal of all land and improvements within two years of one another, the State Board of Equalization and Assessment shall fix separate and distinct tax levies so that the county which has most recently completed a general reappraisal of all lands and improvements shall provide the same percentage of the political subdivision's budget as it provided prior to such reappraisal. For all tax years commencing on or after January 1, 1981, the State Board of Equalization and Assessment shall not be empowered to fix separate and distinct levies but shall annually review and equalize assessments of property among counties." The proposed amendment was submitted to the electorate at the November 1978, general election, adopted by them, and proclaimed by the Governor to be in "full force and effect as part of the Constitution of the State of Nebraska" on December 5, 1978. Relator, following leave granted by this court, instituted this original action on June 25, 1979. The State Board of Equalization and Assessment held hearings during July and August of 1979, and on August 6, 1979, ordered the equalization of tax assessments of property in various counties

in the state. On motion of the relator, this court, on August 21, 1979, entered a restraining order against the respondents prohibiting them from enforcing the provisions of the constitutional amendment in question during the pendency of the action. Respondents made no objection to the entry of the restraining order.

Under Rule 2 (b) of this court, the procedure in original actions, when commenced after leave to do so has been granted, shall be the same as in the District Court except as otherwise ordered. The rules relating to the granting of summary judgments in this state are well established and need not be repeated in detail. Section 25-1332, R. R. S. 1943, provides in part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The facts involved herein have been admitted and stipulated to, and are not in dispute. It is clear, therefore, that relator's motion must be granted if his position in this litigation is correct as a matter of law.

Relator's argument against the validity of the amendment rests on two principal grounds. First, relator contends that the action of the Legislature in adopting Legislative Resolution 1 was void and in violation of Article IV, section 8, of the Nebraska Constitution, in that the submitting of such a constitutional amendment to the electors was not included in the purposes for which the special session of the Legislature was convened, as set forth in the Governor's proclamation calling them into special session; and that said amendment was therefore not adopted in conformity to law, and is of no force and effect. Second, relator contends that the amendment in question is violative of several provisions of the United States and Nebraska Constitutions relat-

ing to due process and equal protection of the laws. We shall examine these contentions in reverse order.

In this connection, relator contends that the amendment in question is violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. It is generally held that the Equal Protection Clause of the Fourteenth Amendment is applicable to state tax legislation and imposes considerable restraint upon state taxing power. 71 Am. Jur. 2d, State and Local Taxation, § 157, pp. 479, 480; 16A C.J.S., Constitutional Law, § 520, p. 382; Allied Stores of Ohio v. Bowers, 358 U. S. 522, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959); Kahn v. Shevin, 416 U. S. 351, 94 S. Ct. 1734, 40 L. Ed. 2d 189 (1974); Hillsborough v. Cromwell, 326 U. S. 620, 66 S. Ct. 445, 90 L. Ed. 358 (1946); Sioux City Bridge v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923). The amendment in question being an amendment to Article VIII, section 1, of our Nebraska Constitution, it is therefore necessary that we examine the amendment in question in light of the federal Constitution.

The effect of the Equal Protection Clause on the "uniformity" provision of Article VIII, section 1, was discussed in Sioux City Bridge v. Dakota County, *supra,* where the court stated: "[W]here it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." The court held in that case: "[T]he right [under the Fourteenth Amendment] of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute." The same rules requiring uniformity of taxation apply to rate of taxation as well as valuation.

This court has frequently interpreted the language

of Article VIII, section 1, of the Nebraska Constitution. In Gates v. Howell, 204 Neb. 256, 282 N. W. 2d 22 (1979), we stated: "In each instance, we have clearly and unequivocally found that the provisions of Article VIII, section 1, require not only that the valuation of property for taxation be uniform, but *the rate as well.* Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85." (Emphasis supplied.) To the same effect, see, State ex rel. Meyer v. Peters, 191 Neb. 330, 215 N. W. 2d 520 (1974); Grainger Brothers Co. v. Board of Equalization, 180 Neb. 571, 144 N. W. 2d 161 (1966); Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489 (1954); State v. Back, 72 Neb. 402, 100 N. W. 952 (1904).

Recapitulating, therefore, it is clear that Sioux City Bridge v. Dakota County, *supra*, which specifically considered the provision of the Nebraska Constitution requiring uniformity in taxation, established the principle that a failure to do so would be a violation of the Fourteenth Amendment to the federal Constitution. Likewise, Nebraska cases cited above clearly establish the rule that the requirement of uniformity referred to is applicable not only to the valuation of property, but also to the rate of taxation thereon. We must therefore examine the facts admitted and stipulated to by the parties, as well as the clear language of the amendment itself, to determine whether the rate of taxation imposed under the provisions of said amendment would be uniform and proportionate upon property in the same taxing district.

An examination of the legislative history of Legislative Resolution 1, which gave rise to the submission of the amendment in question to the electorate, will be helpful in this regard. During the floor debates on the resolution, Senator Warner, the introducer of the resolution, was questioned by one of the senators with regard to differing rates of taxation within the same taxing district. The discourse be-

tween the two was as follows: "Senator Lamb: Okay, you have two counties side by side, say they have a school district which overlaps those counties A & B, okay, so you adjust the mill levy in County A to reflect the lack of reappraisal in County B. Okay, County A also has a school district on the other side which is County C and which has a school district which overlaps County A and County C. Therefore you are going to have to have a different mill levy to reflect the reappraisal of County C or the lack of reappraisal. Will you not have to have a number of different mill levies in the same county to reflect the differences in the bordering counties?

"Senator Warner: I think that the answer to your question is yes. But, let me point out that the uniformity that we are trying to approach here, let me go back to the comment that I made earlier. It would be my position that the requirement for uniformity of assessment and mill levies that is now in the Constitution is essentially based upon the same . . . there shall be a uniformity of dollars paid by the individual tax payer [sic] on like property within the same taxing jurisdiction. What this amendment proposes is a continuation of that uniformity of dollars until all counties have reappraised and it would be true that if you have three counties and two different school districts with one county being in both, yes, *you could conceivably have different levies.* I do not see that a problem at all in terms of calculation because the known valuation of every taxing district is there and a proportionate share of the value between the two counties in a single taxing district is a readily available figure there is no problem about that." (Emphasis supplied.) This interchange demonstrates that even the sponsor of the resolution recognized that the rate of taxation might not be uniform in the same taxing district.

The stipulation of facts entered into between the parties is also helpful in demonstrating that the ap-

plication of the amendment in question in multi-
county taxing districts would necessarily result in a
lack of uniformity of taxation and would hence con-
stitute a violation of the Fourteenth Amendment to
the U. S. Constitution, and would also constitute non-
uniform taxation as prohibited by Article VIII, sec-
tion 1, of the Nebraska Constitution. Although the
stipulation of facts sets out numerous examples of
actual fact situations in multicounty taxing dis-
tricts, we shall discuss only one of the situations re-
ferred to therein, as clearly illustrative of the result-
ing lack of uniformity from the application of the
amendment. The fact situation and illustration stip-
ulated to by the parties involved Gage, Pawnee, and
Johnson Counties, portions of each being in the same
school district. It appears that in 1977, the respec-
tive percentages of the budget for that school dis-
trict furnished by the aforementioned counties were
7.3, 45.3, and 47.4. Gage County reappraised its
property in 1978. It also appears that territory was
added to the multicounty school district in 1978 as a
result of the dissolution of a separate school district
in Gage County. As a result of the reappraisal and
the increase in territory, the percentage of the bud-
get of the multicounty school district furnished by
the respective counties changed. In 1978, Gage
County furnished 23.55 percent, Pawnee County fur-
nished 48.2 percent, and Johnson County furnished
28.03 percent of the budget. It is further stipulated
by the parties that under the constitutional amend-
ment, 1977 would be the base year for the determina-
tion of the percentage of the budget to be provided
by the counties in the multicounty school district. It
follows, therefore, that Gage County, which should
be furnishing 23.55 percent of the budget from prop-
erty located in the multicounty school district,
would, in fact, only furnish 7.3 percent of the budget
for 1979. Such a result clearly contravenes the prin-
ciples of taxation we have adopted in this state, and

is violative of the Equal Protection Clause of the federal Constitution because of the obvious and apparent lack of uniformity in taxation.

The colloquy between the court and counsel for the respondents during oral argument with reference to the question of the uniformity, or lack thereof, which would result from the implementation of the amendment in question is also of interest and helpful in the resolution of this problem. The court inquired of counsel: "Say we have two counties side-by-side and you have a multidistrict between the two counties. In one year County A provided 60 percent of the budget for this taxing multidistrict taxing entity, and County B provided 40 percent. During the year there was a great deal of growth in County B, so that based upon valuations in County B it should now be paying 60 percent of the budget based upon the values that were there. But it doesn't reappraise. Doesn't this require that notwithstanding that fact County A has to continue paying 60 percent of the budget?"

Counsel: "Your honor, now you said two things, one that there has been a great growth in the one county in valuation. Now remember we assess as of January 1st."

Court: "Well make it whatever 12-month period you want but ultimately that fact will come into play won't it?"

Counsel: "I see no reason why the Legislature by implementing this amendment couldn't take care of that problem."

Court: "By saying that they'll not carry out the Constitution?"

Counsel: "There isn't anything in the Constitution that specifically requires that the particular manner be followed. It doesn't say * * *."

Court: "It says that County A shall pay 60 percent of the budget because they paid 60 percent of the budget before."

Counsel: "Let me point out, your honor, that the rule in this state is that the Legislature has unlimited power in the field of taxation unless limited by the Constitution."

Court: "Which says that the taxation shall be equal and proportionate among the counties."

Counsel: "That is correct."

We can see no manner in which the foregoing situation could possibly result in anything other than nonuniform and disproportional taxation. While other situations could be and were argued by the relator with regard to the lack of uniformity necessarily engendered by the implementation of the amendment, we do not deem it necessary at this point to discuss in detail the other examples and fact situations referred to by him, as we believe the foregoing examples clearly illustrate the deficiencies in the amendment in that regard.

We next comment on relator's contention that the amendment in question deprives the taxpayers in the multicounty districts of their procedural due process rights under the United States Constitution and the Nebraska Constitution, specifically the failure of the amendment to provide for an opportunity to the taxpayer to be heard in connection with a change in the amount of his levy. This court has long adhered to the rule that a taxpayer is not deprived of his property without due process of law if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings. See, Hacker v. Howe, 72 Neb. 385, 101 N. W. 255 (1904); County of Douglas v. State Board of Equalization & Assessment, 158 Neb. 325, 63 N. W. 2d 449 (1954); and Frye v. Haas, 182 Neb. 73, 152 N. W. 2d 121 (1967). The amendment involved herein does not in any manner provide for an opportunity for the taxpayer to be heard. Such failure to provide for a hearing also illustrates the de-

ficiencies in the amendment and is a further reason for finding the amendment to be in violation of the United States Constitution and the Nebraska Constitution.

We wish to make it perfectly clear that we consider and pass upon the constitutionality of the amendment in question in the form in which it was adopted and as presented to this court in the original action brought by the relator. Although the respondents argue that any constitutional defects existing in the amendment could be cured by supplementary legislation, assuming for the moment that the amendment could be interpreted as not being self-executing in nature, nevertheless we have no way of knowing the nature and provisions of any subsequent legislation which may be enacted, or, for that matter, if and when such may ever be adopted; those items are entirely conjectural. We might add that although it is conceivable some of the obvious procedural deficiencies in the amendment, such as the lack of notice to the taxpayer and an opportunity to be heard, might be cured by subsequent legislation, nevertheless it is difficult to conceive how any of the substantive constitutional shortcomings could be remedied by further legislation, as such legislation would of necessity violate the constitutional provision itself. The Legislature could not direct the ignoring or violation of any provision of the Constitution, including the amendment in question. We also add that if it were considered a defense to a constitutional attack that any constitutional deficiencies could be corrected by further legislation, the same argument might equally be applied to a constitutional attack upon a statute adopted by the Legislature, which reasoning, of course, is obviously fallacious. We therefore conclude that we must in this case consider only the constitutionality of the amendment itself, keeping in mind also that by the terms of the amendment the provisions for equaliza-

tion by means of adjustment of levies in multicounty districts are self-executing, at least with respect to the expiration date of the amendment, which is December 31, 1980.

With the foregoing in mind, and based upon a study of the applicable law and the facts stipulated to by counsel for the parties in this action, we therefore conclude that the amendment in question violates the Equal Protection and Due Process Clauses of the United States Constitution and hence is invalid.

In view of the decision we reach here, we need not examine the other matters raised by relator bearing upon the invalidity of the amendment. The question arises, however, as to the wisdom of engrafting provisions which are of very short duration, such as the instant amendment, upon the permanent Constitution of this state. While we do not believe that this should be done, we fully realize that the matter is properly within the discretion of both the Legislature and the people. We only hold here that the purported amendment involved herein is unconstitutional and void. We therefore sustain relator's motion for a summary judgment and enter a verdict for relator in this action.

JUDGMENT FOR RELATOR.

BRODKEY, J., concurring.

Obviously I agree with the conclusions of the majority opinion, so far as it goes. In the majority opinion, however, the court chose to ignore, and did not comment upon, the contention of the relator that the amendment in question is void for the reason that the resolution for such amendment, adopted by the Legislature at a special session convened by the Governor, was not included in the Governor's proclamation calling the Legislature into session. I am in full agreement with the parties to this action, and believe that the matter should be forthrightly discussed. It cannot be ignored.

It has long been recognized in this state that the self-imposed limitations on the power of the people to amend their fundamental law should not be so construed as to defeat the will of the people, plainly expressed, on account of a slight and unimportant failure to comply literally with such limitations, if the requirements are substantially observed. State v. Winnett, 78 Neb. 379, 110 N. W. 1113 (1907). That proposition notwithstanding, it is also true that where the Constitution prescribes certain procedures with regard to the amendment of that document, there must be substantial compliance with those requirements in order to effect either a valid submission or adoption of the attempted amendment. State, ex rel. Hall v. Cline, 118 Neb. 150, 224 N. W. 6 (1929).

Relator contends that the amendment was not submitted to the voters in substantial compliance with the provisions of the Constitution. Specifically, relator claims that the amendment was not within the purposes for which the Legislature was convened in special session. In support of this position, he directed the attention of this court to Article IV, section 8, of the Constitution, which provides: ''The Governor may, on extraordinary occasions, convene the Legislature by proclamation, stating therein the purpose for which they are convened, and the Legislature shall enter upon no business except that for which they were called together.''

The two purposes for which the special session of the Legislature was called were: (1) To extend the operative date of the criminal code; and (2) to enact spending limitations on government budgets. That the scope of LR 1 is not within the purpose of extending the operative date of the criminal code is clear. I likewise do not believe that the substance of LR 1 can fall within the purview of enacting spending limitations.

"It is well established that the Legislature while in special session can transact no business except that for which it was called together. Chicago, B. & Q. R. R. Co. v. Wolfe, 61 Neb. 502, 86 N. W. 441. The proclamation may state the purpose for which the Legislature is convened in broad, general terms or it may limit the consideration to a specified phase of a general subject. The Legislature is free to determine in what manner the purpose shall be accomplished, but it must confine itself to the matters submitted to it by the proclamation." Arrow Club, Inc. v. Nebraska Liquor Control Commission, 177 Neb. 686, 131 N. W. 2d 134 (1964).

Respondents contend that the preamble to LR 1 would cause it to fall within the second announced purpose for calling the special session of the Legislature, that of enacting spending limitations on government budgets. The language to which they refer undoubtedly is: "Whereas, to insure that the budget of any political subdivision which has multicounty assessment is not excessive and does not provide undue fluctuation, * * *." I do not believe that this general language causes LR 1 to come within the scope of the call.

"Legislative construction of a statutory or constitutional provision, although not conclusive on the courts, when deliberately made is entitled to great weight." Stahmer v. State, 192 Neb. 63, 218 N. W. 2d 893 (1974). See, also, Dwyer v. Omaha-Douglas Public Building Commission, 188 Neb. 30, 195 N. W. 2d 236 (1972). The expressed purpose for the amendment was "to recognize that political subdivisions which cross county lines may result in property tax inequities if reappraisals are not accomplished in a consistent and timely manner in the counties where such a situation exists." In explaining the purpose of the resolution, Senator Warner, the introducer of LR 1, stated: "Now, the purpose of LR 1 is to address the problem of inaction by the Board of Equali-

zation now for nearly nine years; and it suggests that unusual means may be needed to work out the themes which we find ourselves in the state because of lack of the State Board of Equalization in that responsibility that they have both by statute and by the Constitution." Senator Warner also stated: "The constitutional amendment is aimed at a single problem and that single problem is the inequity, the injustice that occurs when counties reappraise at different times and multi-county taxing districts are involved. It's all that's aimed at addressing and is intended to be only for this interim period, which we all, I think, recognize we're going to be going through until that job is completed." It is clear from the above that the purpose of LR 1 was to force the State Board of Equalization and Assessment to promote and provide equality in taxation of property in multicounty districts. I do not believe that requiring the State Board of Equalization and Assessment to equalize taxation by the adjustment of levies in multicounty districts is sufficiently similar to enacting spending limitations on government budgets. While it is possible that the items may be tangentially related, it is clear that they deal with separate and distinct subjects in this case. I am firmly convinced that the subject matter of LR 1 does not fall within the scope of the call of the Governor.

However, the inquiry cannot be limited solely to Article IV, section 8, of the Nebraska Constitution. Respondents contend that the Legislature has the power to propose constitutional amendments at all sessions, regardless of whether the session is a special session or a general session. Article XVI, section 1, must be considered in connection with this contention. It provides as follows: "The Legislature may propose amendments to this Constitution. * * *" In this connection see, also, § 49-201, R. R. S. 1943. We have recognized that each and every clause

of the Constitution has been inserted for some useful purpose. Constitutional provisions should receive even broader and more liberal construction than statutes, and constitutions are not subject to the rules of strict construction. Anderson v. Tiemann, 182 Neb. 393, 155 N. W. 2d 322 (1967); School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752 (1972). The two provisions of the Constitution referred to must, therefore, be read together and must be liberally construed to reach a harmonious result, if possible. It is clear that such a reading is possible.

It is clear that the drafters of our Constitution only meant to allow the Legislature to transact that business for which it was called into special session and no other. This is made obvious by the remarks of Delegate Robinson during the debate on this particular provision of the Constitution at the 1871 Constitutional Convention. He stated: "It is well known that a Constitutional provision of this kind acts as an indication of the powers of the Legislature; and if the Constitution provides that no business of a certain character shall be transacted, it means what it says; and if business is transacted, it is treated as no business, whatever." 1 Nebraska Constitutional Conventions 190 (1906). I do not believe that the constitutional amendment in question is "alike, closely allied, or related to" the stated purposes of the call. Lost Creek Drainage Dist. v. Kring, 193 Neb. 450, 227 N. W. 2d 421 (1975). Not being germane to the call, it necessarily follows that Legislative Resolution 1 was not business before the Legislature, and thus was not properly submitted to the electorate. The general rule is stated in 16 C. J. S., Constitutional Law, § 9, p. 51, as follows: "It has been stated generally that a legislature may propose amendments at either a regular or special session. However, under constitutional provisions to the effect that the legislature, when convened in a special

or extra session, shall have no power to legislate on subjects not named in the call, amendments may be proposed at a special session if proposals for amendments to the constitution have been included in the proclamation of the governor calling the special session, *but not otherwise.*" (Emphasis supplied.) See, also, People v. Curry, 130 Cal. 82, 62 P. 516 (1900); State v. Schoonover, 146 W. Va. 1036, 124 S. E. 2d 340 (1962). Counsel for respondents relies on the case of Sweeney v. King, 289 Pa. 92, 137 A. 178 (1927), apparently holding to the contrary. However, a reading of that decision discloses a call of a special session of the Legislature by the Governor was not involved in any of the cases cited in that opinion. While it is true that a constitutional amendment may be proposed by the Legislature convened in a special session, I am firmly convinced that under our constitutional provisions, the subject matter of the amendment to be proposed must fall within the express purposes announced by the Governor in his proclamation calling the Legislature into special session. In my opinion this constitutes a valid additional ground for finding the amendment in question to be unconstitutional and that the contention of the Attorney General to this effect was absolutely correct.

CLINTON, J., concurring in part.

I concur in the opinion of the court insofar as it holds that the amendment to Article VIII, section 1, of the Nebraska Constitution, resulting from the proposal of Legislature Resolution 1, Eighty-fifth Legislature, First Special Session, 1978, subsequently adopted by the people in the election of November 1978, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. For reasons which I will state later, I do not concur in the balance of the opinion.

Before stating why I do not join in the court's opinion on the due process issue, I wish to add a few words of my own on the equal protection ground.

The opinion of the court sets forth one glaring example of the inequalities in taxation which would arise as a result of implementation of the amendment, viz., the school district located in parts of Gage, Pawnee, and Johnson Counties. The example is an accurate, although a rather complex, one. It might be useful to the general understanding of the court's opinion if a somewhat simpler example were used.

Before giving the simpler example, it will add clarity to restate the premise on which the amendment would operate. The proposed amendment operates on the assumption that equality in valuation of property between counties does not exist in certain instances. The amendment is designed to achieve uniformity in taxation by adjusting the levy to compensate for the lack of uniformity in value. It follows, of course, that in cases where uniformity in valuation exists for the taxable year in question, adjustment of the levy will result in the lack of uniformity.

Now the example. Motor vehicles are uniformly valued, as near as can be, throughout the state. § 77-1238 et seq., R. R. S. 1943. The levy on such vehicles is computed "at a rate equal to the ad valorem rate for all purposes for the preceding year in the several taxing units of the state" in which the vehicle has tax situs. § 77-1240.01, R. R. S. 1943. Under the amendment, equally valued motor vehicles would, because of the adjustment of the levy, be taxed at different rates within the same taxing district, e.g., the school district lying in more than one county, and so owners of property of identical value would pay unequal amounts of taxes for the same purpose.

Because the amendment assumes as a basic premise that inequality exists, it makes no provision for the cases where equalization between counties has been accomplished. If, e.g., the State Board of Equalization and Assessment has, in 1979, carried

out (as nearly as can be done) its statutory function of equalizing valuation between counties, then, despite that fact, implementation of the amendment because of the arbitrary imposition of a base year would almost completely unsettle the equalization presumably accomplished throughout the state.

Let us now turn to the due process question. If the amendment is unconstitutional under the equal protection provisions of the Fourteenth Amendment to the Constitution of the United States, then it is, of course, unnecessary to consider the due process claim and I would not do so. On this point, however, I find the paragraph in the opinion referring to "the failure of the amendment to provide for an opportunity to the taxpayer to be heard in connection with a change in the amount of his levy," to be so vague as to cast doubt upon historic procedures pertaining to the fixing of the *levy*. I believe the statement may be read as saying something not intended, so in the hope of avoiding some future misunderstanding, I wish to say something about it.

Neither the Constitution of the United States nor of this state requires notice before *levy* of general taxes. Hansen v. County of Lincoln, 188 Neb. 461, 197 N. W. 2d 651; Frye v. Haas, 182 Neb. 73, 152 N. W. 2d 121; Nickey v. Mississippi, 292 U. S. 393, 54 S. Ct. 743, 78 L. Ed. 1323. Levy of taxes is a legislative matter. It is sufficient if there is an opportunity to challenge the *legality* of the tax before it is collected.

Under our statutory scheme, even notice of valuation changes is necessary only when such changes are made by the assessor. The pertinent statutes relative to notice do not apply to changes in valuations of classes of property or percentage changes made over a whole taxing district by the State Board of Equalization and Assessment. Hansen v. County of Lincoln, *supra*. We there said: "Plaintiff relies upon the provision of section 77-1315, R. R. S. 1943, requiring a notice to the taxpayer where his prop-

erty 'has been assessed at a higher figure than at the last previous assessment.' We hold that this provision pertains, obviously it seems to us, only to individual valuation changes made by the assessor. It does not and was not intended to apply to changes in classes of property or percentages which were over a whole taxing district made by the State Board of Equalization and Assessment. Nor do the constitutional requirements of due process make such notice mandatory. Frye v. Haas, 182 Neb. 73, 152 N. W. 2d 121.''

In Frye v. Haas, *supra*, we said: ''The rule is stated in Nickey v. State of Mississippi, 292 U. S. 393, 54 S. Ct. 743, 78 L. Ed. 1323, as follows: 'There is no constitutional command that notice of the assessment of a tax, and opportunity to contest it, must be given in advance of the assessment. It is enough that all available defenses may be presented to a competent tribunal before exaction of the tax and before the command of the state to pay it becomes final and irrevocable. Wells, F. & Co. v. Nevada, 248 U. S. 165; Bristol v. Washington County, 177 U. S. 133, 146; McMillen v. Anderson, 95 U. S. 37; see American Surety Co. v. Baldwin, 287 U. S. 156, 168.' ''

In State ex rel. City of Omaha v. Lynch, 181 Neb. 810, 151 N. W. 2d 278, we said: '' 'The levy of a tax is not a judicial function, nor is it merely the ministerial action of ascertaining the rate per cent; but it is a legislative function to be exercised only by the state or some inferior political division to which the state has delegated the power.' ''

I do not believe that the majority opinion was intended to place in question the foregoing fundamentals. I think what may be implied from the statement which I question is that changes in the levy under the proposed amendment are tantamount to valuation changes *in only a portion of a taxing district* and hence result in unequal taxation for the same purpose and in the same district, and hence

are unconstitutional. I do not believe the majority want to be understood as saying that the levy of a tax without notice is unconstitutional. If it were, none of us would be required to pay because none of us are given special notice of the levy prior to its setting.

BOSLAUGH, J., concurring.

I agree with Judge Clinton that the decision in this case should be based upon equal protection grounds.

While a lack of essential procedural provisions may prevent a constitutional amendment from being operative until legislation has supplied the necessary procedure, that alone should not be a basis upon which to declare the amendment invalid. Generally, it is desirable to supply procedural details by legislation, reserving the Constitution for more general statements of the fundamental law.