REQUESTED BY: Senator Jerome Warner Nebraska State Legislature
You have requested our opinion on two questions relating to proposed legislation which would change the assessment date for personal property to July 1 for tax year 1992 and thereafter, while retaining an assessment date of January 1 for real property. You indicate that these questions may be relevant to a proposed call of a special session of the Nebraska Legislature which may be commenced prior to the initiation of the regular session in January, 1992.
Your initial question is whether it is constitutional for the Legislature "to provide for different assessment (valuation) dates for personal and real property, if the county and state boards of equalization are then authorized or required to "equalize' the values of the two types of property?"
Article VIII, § 1, of the Nebraska Constitution provides in relevant part that, except for motor vehicles, "taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises. . . ." The rule of uniformity applies to both the rate of taxation and the valuation of property for purposes of taxation. State exrel. Douglas v. State Bd. of Equal., 205 Neb. 130, 286 N.W.2d 729
(1979); State ex rel. Meyer v. McNeil, 185 Neb. 586, 177 N.W.2d 596
(1970). "Personal property and real property are both 'tangible property' under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1. MAPCO Ammonia Pipeline, Inc. v. StateBd. of Equal., 238 Neb. 565, 573, 471 N.W.2d 734, 740 (1991) ["MAPCO"].See also Grainqer Brothers Co. v. Board of Equal., 180 Neb. 571,144 N.W.2d 161 (1966). "[T]he object of the law of uniformity is accomplished if all of the property within the taxing jurisdiction is assessed at a uniform standard of value." Carpenter v. State Bd. ofEqual., 178 Neb. 611, 619, 134 N.W.2d 272, 278 (1965) (emphasis in original).
In Xerox Corp. v. Karnes, 217 Neb. 728, 350 N.W.2d 566 (1984) ["Xerox"], the Nebraska Supreme Court addressed the constitutionality of a legislative enactment establishing that valuations of real and personal property for assessment and taxation were to be based on valuations determined "as of January 1 at 12:01 a.m. of 1981 and every odd-numbered year thereafter. . . ." Xerox, which was obligated to pay the applicable personal property taxes on certain equipment, challenged the constitutionality of this biennial assessment on the ground that it violated Article VIII, § 1, in that the statute required property values to remain unchanged for two years and thus precluded consideration in even-numbered years of depreciation when personal property was valued for tax purposes. Id. at 731-32, 350 N.W.2d at 569. The court, after noting that the uniform standard of valuing property for tax purposes provided by the Legislature was to tax property at its "actual value" (seeNeb.Rev.Stat. §§ 77-112 and 77-201), held this method of biennial assessment unconstitutional, stating:
 The effect of the statute . . . is that in even-numbered years no change may be made in the value of personal property subject to taxation. Thus, such property is subject to a tax levy in even-numbered years without any determination of its actual value for that year.
* * *
 We conclude that [the statute] is violative of Neb. Const. art. VIII, § 1, in that it directs that taxes be levied upon personal property in even-numbered years without regard to the uniform method of valuing property at actual value in 77-201 and as that statute has been interpreted by this court. Id. at 733, 350 N.W.2d at 569.
While the issue addressed in Xerox is not identical to that posed by your initial question, we believe the court's decision in Xerox raises serious doubt as to the constitutionality of any legislative proposal establishing different dates for determining the assessment and valuation of personal and real property for tax purposes. As the court recently reaffirmed in MAPCO, "personal property and real property are both 'tangible property' under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1." 238 Neb. at 573,471 N.W.2d at 740. The establishment of different dates for the valuation and assessment of these types of property raises uniformity concerns similar to those found to exist in Xerox. Deferring by six months the date of assessment of a part of the class of "tangible property" (i.e., personal property) for purposes of establishing taxable values for such property is inconsistent with the principle that all property (both real and personal) must be taxed uniformly, as required by Article VIII, § 1. Values of personal property subject to taxation may clearly differ depending on whether such property is assessed and valued as of January 1, as opposed to July 1. Thus, in our view, legislative action setting different dates for the valuation and assessment of personal and real property would be unconstitutional as violative of the requirement of uniformity in Neb. Const. art. VIII, § 1.
In addition, we believe that, irrespective of whether the establishment of different assessment dates for real and personal property could be held not to violate the uniformity requirement of Article VIII, § 1, a serious question exists as to whether a classification of this nature would constitute impermissible special legislation prohibited by Neb. Const. art. III, § 18.
In City of Scottsbluff v. Tiemann, 185 Neb. 256, 266, 175 N.W.2d 74,81 (1970), the Nebraska Supreme Court stated:
 It is competent for the Legislature to classify objects of legislation and if the classification is reasonable and not arbitrary, it is a legitimate exercise of legislative power [citation omitted.] The classification must rest upon real differences in situation and circumstances surrounding members of the class relative to the subject of the legislation which renders appropriate its enactment. [citations omitted.] The power of classification rests with the Legislature and cannot be interfered with by the courts unless it is clearly apparent that the Legislature has by artificial and baseless classification attempted to evade and violate provisions of the Constitution prohibiting local and special legislation. [citation omitted.] A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. [citations omitted.] (emphasis in orginal.)
In view of the court's recent decision in MAPCO holding unconstitutional the Legislature's attempt to redefine real and personal property for tax purposes under LB 1 as establishing an unreasonable classification in violation of Article III, § 18 (238 Neb. at 570-76,471 N.W.2d at 740-42), the court could well determine that a classification establishing different assessment dates for real and personal property results in impermissible special legislation in contravention of this constitutional provision.
Finally, we point out that establishing an assessment date of July 1 for personal property would be wholly at odds with the existing scheme for the assessment and equalization of property. Neb.Rev.Stat. §77-1315 (Reissue 1990) provides that the county assessor must complete the revision of the assessment rolls, schedules, returns and lists, and file a certificate indicating such revision has been completed on or before April 1. Neb.Rev.Stat. § 77-1502 (Reissue 1990) provides that the county board shall meet as a board of equalization for the purpose of reviewing and deciding protests, "commencing on April 1 of each year and ending on May 31." In addition, the county board of equalization is required to equalize the valuation of real and personal property in the county no later than May 31 of each year. Neb.Rev.Stat. § 77-1504
(Reissue 1990). Percentage adjustments of classes or subclasses of property must be made by the county board of equalization on or before June 15. Neb.Rev.Stat. 77-1506.02 (Reissue 1990). Finally, Neb.Rev.Stat.
§ 77-1514 (Reissue 1990) requires the county assessor to prepare, not later than June 25 of each year, an abstract of the assessment rolls showing the values as equalized and corrected by the county board of equalization, and requires the county assessor to forward such abstract to the State Board of Equalization on or before July 1.
Obviously, the establishment of an assessment date of July 1 for personal property simply does not fit within the scheme setting forth the assessment and equalization of property currently in existence under Nebraska law. The assessment and equalization process for locally assessed property is completed at the county level prior to July 1, the date upon which you propose to determine the valuation of personal property for assessment. While various time periods relating to the assessment and equalization process could conceivably be adjusted to attempt to deal with this concern, it appears that any effort to "roll back" the entire process would pose numerous administrative difficulties in the operation of the property tax system.[1]
Your second question is whether it is "constitutional to continue the reimbursement distribution formula provided in LB 829 (based on assessments made in January, 1991) into 1992 for the 1992 tax year?" You further ask whether, "if the 'reimbursement' is continued for 1992 for a continued exemption of heretofore taxed personal property (i.e., primarily business equipment), must there be some more recent and accurate basis (other than January 1, 1991 assessments) on which to determine the property tax loss, such as assessments for 1992?" You conclude by asking whether "a `reimbursement' distribution formula for 1992 based on 1991 tax losses" would be a "reasonable classification?"
In State ex rel. Douglas v. Marsh, 207 Neb. 598, 300 N.W.2d 181
(1980) ["Marsh"], the court addressed the constitutionality of legislation establishing a form of state aid to political subdivisions known as the "Local Government Revenue Fund" ["Fund']. The Fund was enacted to replace a prior legislative scheme, the "Personal Property Tax Relief Fund," which was intended to reimburse political subdivisions for revenues lost by virtue of the exemptions granted by the Legislature to various types of personal property, including business inventories, agricultural machinery and equipment, farm inventories, and livestock. Id
at 602, 300 N.W.2d at 183-84. Distributions were to be made from the Fund based upon the percentage each county received from the Fund in a base year plus an amount equal to ten percent of the change in the total amount of general taxes levied in the county. Id. at 600-601,300 N.W.2d at 183. The Attorney General challenged the validity of the act, contending that the classifications established "created an arbitrary and unreasonable closed classification in that they prevent[ed] a county from moving from one classification to another . . ., contrary to Neb. Const. art. III, § 18, which provides that where a general law can be made no special law shall be enacted." Id. at 601, 300 N.W.2d at 183.
In holding that the reimbursement scheme enacted under the Fund created an unreasonable "frozen" or "crossed" classification impermissible under Neb. Const. art. III, 18, the court in Marsh
stated:
 We fail to see how it can be argued that there is any reasonable classification when the classes in the first instance are based upon historic facts alone. To be sure, if the formula were continued to be used in future years and adjustments made accordingly, the action of the Legislature might be held to be reasonable; but where it is determined that the classification is based upon happenstance events in a given year and thereafter remains forever, regardless of the changes in circumstances, the classification must be held to be invalid and the act in violation of our State Constitution. Id. at 609, 300 N.W.2d at 187.
Thus, in response to your second inquiry, we conclude that it would be unconstitutional for the Legislature to retain a "reimbursement formula" for aid to governmental subdivisions for personal property tax revenues which may be lost for 1992 based solely on the reimbursement formula contained in § 26 of LB 829, which takes into consideration only personal property tax revenues lost as the result of exemptions granted for tax year 1991. The use of an historical figure of this nature would establish an impermissible "closed" classification in violation of Neb. Const. art. III, § 18.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
7-212-7.7
APPROVED:
____________________________ Don Stenberg, Attorney General
[1] We note that owners of personal property are not required to file tax forms listing such property with county assessors until March 1.Neb.Rev.Stat. § 77-1229 (Reissue 1990). Should the Legislature act to extend the exemption of personal property under LB 829 to tax year 1992 prior to this date (either in a special session late in 1991 or early in the regular session commencing in January, 1992), personal property owners would not be required to file such tax forms by March 1, 1992.