REQUESTED BY: Senator Mark Quandahl Nebraska State Legislature
You have requested an Attorney General's Opinion as to whether LB 6, LB 7 and LB 19, 97th Legislature, First Special Session, are within the scope of the Governor's call dated October 23, 2001. You also ask "what would be the likely outcome or effect if the Legislature attempted to consider or enact" the bills if they are found by a court to be outside the scope of the call.
Our analysis must begin with the Nebraska Constitution. Article IV, Section 8 of the Nebraska Constitution provides: "The Governor may, on extraordinary occasions, convene the Legislature by proclamation, stating therein the purpose for which they are convened, and the Legislatureshall enter upon no business except that for which they were calledtogether." (emphasis added).
In construing this provision, the Nebraska Supreme Court described its terms as follows:
 Neb. Const. art. IV, § 8, as part of the power of the executive branch of government, permits the Governor to determine when an extraordinary occasion exists, necessitating convention of a special session of the Nebraska Legislature. The subject matter restriction envisioned in Neb. Const. art. IV, § 8, empowers the Governor to set the boundaries of legislative action permissible at a special session of the Nebraska Legislature.
Jaksha v. State, 222 Neb. 690, 698, 385 N.W.2d 922 (1986). Therefore, as was discussed in Op. Att'y Gen. No. 89069 (Nov. 9, 1989), the last portion of Article IV, Section 8 places an express limitation on the power of the Legislature to act during a special session. In Arrow Club, Inc.v. Nebraska Liquor Control Commission, 177 Neb. 686, 689, 131 N.W.2d 134,137 (1964), the court discussed the nature of this limitation:
 It is well established that the Legislature while in special session can transact no business except that for which it was called together. Chicago, B. Q. R.R. Co. v. Wolfe, 61 Neb. 502, 86 N.W. 441. The proclamation may state the purpose for which the Legislature is convened in broad, general terms or it may limit the consideration to a specified phase of a general subject. The Legislature is free to determine in what manner the purpose shall be accomplished, but it must confine itself to the matters submitted to it by the proclamation.
(emphasis added).
The court in Arrow Club, quoting at length from the Pennsylvania Supreme Court's decision in Commonwealth ex rel. Schnader v. Liveright,306 Pa. 35, 161 A. 697 (1932), continued as follows:
 This constitutional provision contemplates that there shall first exist in the executive mind a definite conception of the public emergency which demands an extraordinary session. His mental attitude or intention is expressed in his proclamation, the purpose of which is to inform the members of the legislature of subjects for legislation, and to advise the public generally that objections may be presented if desired. It is not only a guide or chart with respect to which the legislature may act, but also a check restricting its actions so that rights may not be affected without notice. The proclamation may contain many or few subjects according to the governor's conception of the public need. While the subjects may be stated broadly or in general terms, the special business, as related to the general subject on which legislation is desired, should be designated by imposing qualifying matter to reduce or restrict. Although the subjects should be sufficient to evoke intelligent and responsive action from the legislature, it is not necessary that they include all the methods of accomplishment. The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation. In construing a call the words of any portion thereof must be interpreted not only as commonly and universally understood, but also as applicable to the subject intended to be affected by legislation.
 While the legislature must confine itself to the matters submitted, it need not follow the views of the governor or legislate in any particular way. Within the special business or designated subjects submitted, the legislature cannot be restricted or dictated to by the governor. It is a free agent, and the governor, under the guise of definition, cannot direct or control its action. The Legislature while in special session may enact legislation relating to, germane to, and having a natural connection with the purpose for which it was convened. . . . The presumption is always in favor of the constitutionality of legislation, and an act should be held to be within the call if it can be done by any reasonable construction.
Arrow Club, 177 Neb. at 689-90, 131 N.W.2d at 137.
As was stated in Op. Att'y Gen. No. 86028 (Nov. 14, 1986), "the decision in Arrow Club, reflects certain general principles regarding the limitations imposed on legislative action by virtue of the scope of the executive's call for a special legislative session. First, courts uniformly agree that, for a legislative enactment to be valid under the call, the legislation must be 'germane' or 'related to' the subjects stated in the call. Second, it is universally held that the Governor's call cannot be used to inhibit legislative discretion, and that . . . 'the Governor may not, under the guise of naming a subject, limit its scope so drastically that he in effect imposes upon the Legislature his own view of what policy should be adopted.' Comment, Scope of Governor'sCall as Constitutional Limitation on Business of Special Session of theLegislature, 43 Neb. L. Rev. 605, 608-09 (1964)."
Thus, the primary case which guides our analysis contains language narrowly construing the constitutional provision, Arrow Club,177 Neb. at 689 ("The proclamation . . . may limit the consideration to a specified phase of a general subject."), but also contains language indicating the provision is to be liberally construed to uphold legislative acts. Id. at 690 ("an act should be held to be within the call if it can be done by any reasonable construction."). In light of this somewhat confusing language, it is useful in understanding the case to examine what the court in Arrow Club
actually did, as well as what it said.
In Arrow Club the court considered the validity of a bill enacted during a special session that related to "the regulation and operation of bottle clubs." Arrow Club, 177 Neb. at 690. The special session had been convened "to consider amendments to the Liquor Control Act relating to the licensing of nonprofit corporations." Id. Thus, the question before the court was "whether the regulation and operation of bottle clubs relates to, is germane to, or has a natural connection with the definition of nonprofit corporations." Id. The court concluded,
 There is a fundamental difference between a nonprofit corporation license and a bottle club license under the Liquor Control Act. A bottle club license authorizes the storage and consumption of liquor upon the premises of the licensee by persons who have made their own purchase of liquor. . . . A nonprofit corporation license is a retail license for the sale of alcoholic liquors, including beer. * * * In view of this difference, we think the regulation and operation of bottle clubs does not relate to, is not germane to, and has no natural connection with the definition of nonprofit corporations.
Id. at 691.
The court, therefore, struck down the provisions as violating Neb. Const. art. IV, § 8. Id. at 692. Thus, despite the fact the bill and the Governor's call both pertained to issuance of licenses under the Liquor Control Act, the court adopted a narrow view of germaneness, limiting it to "a specified phase of a general subject." Id. at 689. Since bottle club licenses did not cover retail sales of alcoholic beverages, the two were not considered to have a "natural connection" with each other.
In light of the Arrow Club decision, it appears the Nebraska Supreme Court would take a restrictive view of what legislation is considered germane to a Governor's special session call. As one Supreme Court judge stated some fifteen years after Arrow Club,
 It is clear that the drafters of our Constitution only meant to allow the Legislature to transact that business for which it was called into special session and no other. This is made obvious by the remarks of Delegate Robinson during the debate on this particular provision of the Constitution at the 1871 Constitutional Convention. He stated: "It is well known that a Constitutional provision of this kind acts as an indication of the powers of the Legislature; and if the Constitution provides that no business of a certain character shall be transacted, it means what it says; and if business is transacted, it is treated as no business, whatever."
State ex rel. Douglas v. State Board of Equalization and Assm't,205 Neb. 130, 144, 286 N.W.2d 729 (1979) (Brodkey, J., concurring) (quoting 1 Nebraska Constitutional Conventions 190 (1906)). See also Op. Att'y Gen. No. 89072 (Nov. 14, 1989) ("It should be noted that our Supreme Court, as evidenced by the decision in Arrow Club . . . has adopted a rather restrictive view in assessing whether legislation enacted in a special session falls within the scope of the Governor's call."); Op. Att'y Gen. No. 86080 (Dec. 8, 1986) ("given the restrictive view which our Supreme Court has taken in interpreting the scope of the Governor's call during special sessions. . . .").
 The Call
With this background, we must next examine the actual language of the Governor's call. The call issued by the Governor on October 23, 2001, states as follows:
 PROCLAMATION
BY VIRTUE OF THE AUTHORITY VESTED in the Governor by Article IV, Section 8, of the Constitution of the State of Nebraska, I, Mike Johanns, as Governor of the State of Nebraska, believing that an extraordinary occasion has arisen, DO HEREBY CALL the Legislature of Nebraska to convene in extraordinary session at the State Capitol on October 25, 2001, at 3 p.m. for the purpose of considering and enacting legislation on only the following subjects:
1. To reduce or eliminate appropriations and reappropriations approved by the 97th Legislature;
2. To lapse cash funds to the State General Fund;
3. To eliminate or reduce certain transfers from the State General Fund;
4. To increase or make certain transfers to the State General Fund;
5. To appropriate funds for the necessary expenses of the extraordinary session herein called;
6. To adopt statutory modifications to change the designation of certain portions of the Documentary Stamp Tax from the Affordable Housing Trust Fund to the State General Fund;
7. To adopt statutory modifications to expand the use of the Probation Cash Fund;
8. To adopt statutory modifications to eliminate a transfer from Fund 2262 — Nebraska Nursing Facility Conversion Cash Fund, and to authorize the State Treasurer to transfer the unobligated balance in Fund 2262 — Nebraska Nursing Facility Conversion Cash Fund to Fund 2260 — Department of Health and Human Services — Finance 
Support Cash Fund;
9. To increase certain cash fund, revolving fund, and federal fund appropriations;
10. To modify intent language and earmarks accompanying appropriations approved by the 97th Legislature;
11. To adopt statutory modifications to eliminate a requirement that reorganization incentive payments be paid to school districts or systems that are the result of a consolidation or unification with an effective date after August 1, 2001;
12. To adopt statutory modifications to authorize the State Treasurer to transfer the balance of Fund 2133 — Attracting Excellence to Teaching Program Cash Fund to Fund 1000 — General Fund and to adopt statutory modifications to annually transfer $2,700,000 from Fund 2149 — Education Innovation Fund to Fund 2133 — Attracting Excellence to Teaching Program Cash Fund;
13. To postpone the operative date for LB 433 of the 2001 Legislative Session from the tax year beginning January 1, 2001, to the tax year beginning January 1, 2003; and,
14. To adopt statutory modifications to authorize the State Treasurer to transfer $5,846,593 from Fund 6264 — Nebraska Medicaid Intergovernmental Trust Fund to Fund 2130 — State Department of Education Cash Fund.
I direct that members of the Legislature of the State of Nebraska be notified of the convening of this extraordinary session by presenting to each of them a copy of this Proclamation.
IN WITNESS WHEREOF, I have hereunto set my hand, and caused the Great Seal of the State of Nebraska to be affixed this 23rd day of October in the year of the Lord Two Thousand One.
 (Signed) Mike Johanns Governor
 Analysis of LB 6, LB 7 and LB 19
We now turn to the analysis of LB 6, LB 7 and LB 19 in light of the Governor's call and the legal principles discussed above. The Attorney General's Office has been called upon to issue opinions concerning the scope of the call for special legislative sessions on twenty-one previous occasions. Consequently, we are able to draw upon a considerable body of existing analysis. As was stated in Op. Att'y Gen. No. 136 (Oct. 23, 1985),
 Initially, we believe it is appropriate to make some general observations regarding the scope of the Governor's call. The proclamation calling the Legislature into Special Session does not deal with the state budget in general terms, but, rather, only with specific aspects of the budget, such as reductions in appropriations, a fund transfer, and certain specified means of revenue enhancement. In general, the scope of the call precludes the Legislature from expanding the session to consider and enact legislation concerning budgetary or taxing measures other than those specifically addressed in the call.
With these basic parameters in mind we must next examine the three legislative bills in question.
 LB 6
LB 6 was introduced on October 25, 2001. It is "An Act relating to revenue and taxation; to amend section 77-27,188.01 . . . § 77-5408
. . . and sections 77-4106, 77-5531, and 77-5533 . . .; to changeprovisions dealing with funding for credits and refunds under certainincentive provisions. . . ." (emphasis added). The bill changes provisions dealing with funding for credits for sales and use taxes paid under section 77-27,188.01 by providing that, "Credits used under this section shall be reimbursed to the General Fund from the Employment Expansion and Investment Incentive Fund." A similar amendment is made regarding the credits under section 77-4106.
The bill amends section 77-5408 by providing that the "Credits used under this section shall be reimbursed to the General Fund from the Rural Economic Opportunities Fund." It amends section 77-5531 by providing that "Wage benefit credits used under this section shall be reimbursed to the General Fund from the Invest Nebraska Fund." Likewise, it amends section77-5533 to provide, "Investment tax credits used under this section shall be reimbursed to the General Fund from the Invest Nebraska Fund."
The bill requires the Legislative Fiscal Analyst, together with the Department of Revenue, to develop an estimate of the amount of credits and refunds expected to be claimed under the Employment and Investment Incentive Act, the Invest Nebraska Act, and the Rural Economic Opportunities Act during each biennium. It then provides for an appropriation to the Funds related to such acts, and calls for a deficit appropriation to be made based on actual credits and refunds made for each program during the biennium, if sufficient funds were not appropriated. Thus, the bill appears to be designed to quantify the amount of credits and refunds generated under the various business incentive laws.
None of the 14 items in the Governor's call pertain to the funding of credits and refunds under existing incentive provisions or to the quantification of the cost of credits and refunds under the various business incentive laws. It is true that item number four in the call is written in very broad terms ("To increase or make certain transfers to the State General Fund."), and that LB 6 does involve reimbursement to the General Fund from various incentive funds. However, the bill goes well beyond transfers to the General Fund. Given the restrictive view expressed by the court in Arrow Club, we conclude LB 6 is not within the scope of the call. As was stated in Op. Att'y Gen. No. 135 (Oct. 24, 1985), "The Governor's call for the current special session does not deal with the budget in general, but only with specific facets of that budget. . . ."
 LB 7
LB 7 was also introduced on October 25, 2001. It is an "Act relating to revenue and taxation; to amend sections 77-2101 to 77-2105, 772108, and 77-2113 . . . ; to change calculations relating to estate taxes andgeneration-skipping transfer taxes. . . ." (emphasis added). The bill partially decouples the Nebraska estate tax and generation-skipping transfer tax from the federal Internal Revenue Code.
None of the 14 items in the Governor's call pertain to estate taxes or generation-skipping transfer taxes. LB 7 is not germane to any item in the call under the Arrow Club standard, and the bill is, therefore, clearly outside the scope of the Governor's call.
 LB 19
LB 19 was introduced on October 26, 2001. It is an "Act relating to cigarette tax; to amend § 77-2602 . . . to change distribution of taxproceeds. . . . (emphasis added). The bill increases the amount of cigarette tax going to the Building Renewal Allocation Fund, and it decreases the amounts going to the Primary Class Development Fund and the City of Metropolitan Class Development Fund.
LB 19 bears some similarity to legislation considered in the most recent prior Attorney General's Opinion concerning the scope of a special session call. In Op. Att'y Gen. No. 92114 (Sept. 14, 1992) this office concluded that a bill which reduced the amount of cigarette tax revenues placed in the Municipal Infrastructure Redevelopment Fund (and placed the funds in the State's General Fund) was within the scope of Governor Nelson's call, as it fell within the scope of item number one of the call: "to reduce appropriations approved by the 92nd Legislature. . . ."
LB 19 reduces appropriations to two funds and increases an appropriation to the Building Renewal Allocation Fund (which we understand is a cash fund). Item number one of Governor Johann's call is to "reduce . . . appropriations approved by the 97th Legislature." Item number nine is to "Increase certain cash fund, revolving fund, and federal fund appropriations." It is arguable legislation such as LB 19 was not contemplated by the Governor's call, as the intended purpose of the special session is apparently to reduce a budget shortfall, rather than to change the distribution of tax proceeds. See Arrow Club, 177 Neb. at 689
("In construing a call the words of any portion thereof must be interpreted not only as commonly and universally understood, but also as applicable to the subject intended to be affected by legislation."). Nonetheless, given the broad language of the call (specifically, item numbers one and nine), the lack of general intent language, as well as the analysis set forth in Op. Att'y Gen. No. 92114, we cannot say LB 19 is outside the scope of the call.
 Effect of Consideration or Enactment of Legislation Outside the Call
Finally, you have asked "what would be the likely outcome or effect if the Legislature attempted to consider or enact" the bills if they are found by a court to be outside the scope of the call. Although the Constitution states that "the Legislature shall enter upon no business except that for which they were called together," Neb. Const. art. IV, § 8, we believe only the Legislature, through its internal rules or the rulings of its presiding officers, has the ability to enforce this provision in terms of regulating the Legislature's agenda. Once legislation has been adopted, the Governor may veto it or refuse to sign it. If enacted into law, the matter then becomes one for judicial determination. This aspect of your question was previously addressed in Op. Att'y Gen. No. 136 (Oct. 23, 1985) as follows:
 In Arrow Club . . . certain portions of a bill enacted by the 1963 Special Session, which the court concluded did not relate to a subject included in the proclamation calling the Legislature into Special Session, were held void as being in violation of Article IV, Section 8. Thus, legislation would be declared void by the court as being in violation of the Nebraska Constitution.
Id. at 6 (emphasis added).
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved by:
_____________________________ Attorney General
cc: Clerk of the Legislature